Jonathan Daniel RUSHING, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–084–CR.

Court of Appeals of Texas,
Waco.

July 11, 2001.

Opinion Overruling Rehearing
Aug. 1, 2001.

John M. Hurley, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., James Wiley, Asst. Crim. Dist. Atty., Waco, for appellant.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

When he was sixteen, Jonathan Daniel Rushing was living in a foster home. The home was near the residence of seventy-three-year-old Houston Burgess. Burgess's body was located after a search; he had been missing five days. He was found stabbed to death with his throat cut; his car had been stolen.

Rushing and another juvenile were soon implicated, and they were arrested for the crime. Because Rushing was under age seventeen, the case was initially referred to the juvenile court. That court waived its jurisdiction and transferred the matter to district court for trial as an adult. Rushing was indicted for capital murder, and the case was tried to a jury. The State was statutorily prohibited from seeking the death penalty because of Rushing's age. Tex.Pen.Code Ann. § 8.07(c) (Vernon Supp.2001). Rushing was convicted and sentenced automatically to life in prison.

On appeal Rushing brings the following complaints:

1. The criminal district court never acquired jurisdiction because the order from the juvenile court waiving jurisdiction and transferring the case was never filed among the papers of the criminal district court proceeding.[1]

2. The evidence is legally and factually insufficient to support the conviction.

3. His due process right to a fair trial was violated because he had to wear a leg-brace restraint which the jury saw and was prejudiced by.

4. The State should not have been allowed to call a witness not disclosed before trial.

5. A gruesome crime-scene photograph should not have been admitted into evidence, because it unfairly prejudiced the jury against him.

6. Incriminating statements he made to a juvenile probation officer should have been suppressed.

7 The court should have submitted to the jury the elements of a lesser-included offense.

8. The judgment includes a deadly weapon finding, but that allegation was not alleged in the indictment or submitted to the jury.

We will affirm the judgment.

## JURISDICTION OF THE TRIAL COURT

Rushing claims the judgment and sentence are void. He says the district court never acquired jurisdiction over his case because the order from the juvenile court waiving jurisdiction and transferring the case was not filed with the district court along with the indictment. However, before he can prevail on that issue, he must navigate around article 4.18 of the Code of Criminal Procedure, which requires that a jurisdictional challenge in a juvenile-transfer case be made before trial. Otherwise, appellate review is forfeited.

### Article 4.18

Article 4.18 reads in part:

(a) A claim that a district court or criminal district court does not have jurisdiction over a person because jurisdiction is exclusively in the juvenile court and that the juvenile court could not waive jurisdiction under Section 8.07(a), Penal Code, or did not waive jurisdiction under Section 8.07(b), Penal Code, must be made by written motion in bar of prosecution filed with the court in which criminal charges against the person are filed.

(b) The motion must be filed and presented to the presiding judge of the court:

. . . . .

(2) if the defendant's guilt or punishment is tried or determined by a jury, before selection of the jury begins;

. . . . .

(d) A person may not contest the jurisdiction of the court on the ground that the juvenile court has exclusive jurisdiction if:

(1) the person does not file a motion within the time requirements of this article;

. . . . .

TEX.CODE CRIM.PROC.ANN. art. 4.18 (Vernon Supp.2001). It is undisputed that Rushing did not object to jurisdiction before trial. He asserts, however, that article 4.18 is

---

1. Rushing says this jurisdictional issue should be reviewed on appeal regardless of article 4.18 of the Code of Criminal Procedure, which requires that a jurisdictional challenge to a transfer from a juvenile court be made before trial. That was not done here.

unconstitutional because it violates the Separation of Powers Clause of the Texas Constitution, in that the appellate courts have a right to review the jurisdiction of the trial court which the Legislature cannot take away. TEX. CONST. art. II, § 1 (Vernon 1997).

### Jurisdiction of the Courts of Appeals, and the Right to Appeal

■ The general grant of jurisdiction of the Texas courts of appeals is found in the Texas Constitution:

"... Said Court[s] of Appeals shall have appellate jurisdiction ... under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error. Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law."

TEX. CONST. art. V, § 6; *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996). Section five makes it plain that our jurisdiction includes criminal cases. TEX. CONST. art. V, § 5.[2]

■ As noted in *Carter v. State*, 656 S.W.2d 468, 468 (Tex.Crim.App.1983):

There is a fundamental proposition pertaining to appellate functions of the Judicial Department: A constitutional grant of appellate jurisdiction treats a right of appeal in criminal cases "as a remedy to revise the whole case upon the law and facts, as exhibited in the record," The Republic v. Smith, Dallam, 407 (Tex.), quoted approvingly by the Supreme Court of Texas in Bishop v. The State, 43 Tex. 390, 400 (1875). The Bishop Court noticed "error apparent upon the record," id., at 397, and cor-

rected it by reversing the judgment of the trial court, id., at 403–404.

■ Although the Texas Constitution confers jurisdiction on the courts of appeals to dispose of an appeal once filed, it is the Legislature which gives a party the right to appeal in the first instance. *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim.App.1993); TEX. CONST. art. V, §§ 5, 6. The Court of Criminal Appeals has observed that neither the United States Constitution nor the Texas Constitution confers a right on a defendant to a direct appeal of a criminal conviction. *Phynes v. State*, 828 S.W.2d 1, 2 (Tex.Crim.App. 1992); *Ex parte Shumake*, 953 S.W.2d 842, 843–44 (Tex.App.—Austin 1997, no pet.). Thus, it upheld section 5(b) of article 42.12 of the Code of Criminal Procedure, which denies appeal from a trial court's decision to adjudicate guilt after a deferred adjudication, even in the face of a complaint that the defendant had been denied his constitutional right to counsel at the hearing on adjudication. *Id.*

■ We do not question the Legislature's authority to regulate an appellate court's subject matter jurisdiction. *See Galitz v. State*, 617 S.W.2d 949, 951 (Tex. Crim.App.1981). The Court of Criminal Appeals has stated that our lawmakers may deny the right to appeal entirely or the right to appeal only some things or the right to appeal all things only under some circumstances. *Marin*, 851 S.W.2d at 278.

The Legislature has granted a criminal defendant a general right of appeal. TEX. CODE CRIM.PROC.ANN. arts. 44.02, 44.07 (Vernon Supp.2001). However, it has limited that general right in some respects. For example, when there is a plea bargain agreement not exceeded by the trial court,

---

**2.** The Legislature has expressly conferred on the courts of appeals the jurisdiction to review criminal cases except when the death penalty is imposed. TEX.CODE CRIM.PROC.ANN. art. 4.03 (Vernon Supp.2001).

the defendant must obtain the trial court's permission to appeal unless the appellate issue was raised by written motion filed prior to trial. *Id.* art. 44.02. There is no appeal from a trial court's decision to adjudicate guilt after placing a defendant on deferred adjudication community supervision. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 5(b) (Vernon Supp.2001). Also, the Legislature has expressly limited the State's right of appeal to only specific matters. TEX.CODE CRIM.PROC.ANN. art. 44.01 (Vernon Supp.2001).

### Complaints About Jurisdiction

Article 4.18 might be considered a preservation-requirement statute. Normally a complaint not preserved will not be reviewed on appeal. TEX.R.APP.P. 33.1 (formerly Rule 52(a)). This procedural rule was promulgated by the Court of Criminal Appeals under the statutory authority contained in article 44.33(a) of the Code of Criminal Procedure allowing the court to "make rules of posttrial and appellate procedure not inconsistent with this Code." TEX.CODE CRIM.PROC.ANN. art. 44.33(a) (Vernon Supp.2001). Additional statutory authority is contained in section 22.108 of the Government Code: "The court of criminal appeals is granted rule-making power to promulgate rules of posttrial, appellate, and review procedure in criminal cases except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant." TEX. GOV'T CODE ANN. § 22.108 (Vernon Supp.2001).[3]

■ Jurisdictional requirements, however, fall into a special category. In *Marin*, the Court of Criminal Appeals stated that "jurisdiction" is a "nonwaivable, non-forfeitable systemic requirement" of a criminal proceeding. *Marin*, 851 S.W.2d at 278–79. For example, a minor "may not be tried as an adult, even with his permission, unless the juvenile court relinquishes jurisdiction of him." *Id.* (citing *Ex parte Stanley*, 703 S.W.2d 686 (Tex.Crim.App. 1986)). Because Rule 33.1 "may not abridge, enlarge, or modify the substantive rights of a litigant," the question of "jurisdiction" ordinarily need not be preserved at trial. *Id.* Lack of jurisdiction is fundamental error, and is appealable at any time, even if raised for the first time on appeal. *Stine v. State*, 908 S.W.2d 429, 431 (Tex.Crim.App.1995). Lack of jurisdiction over a case renders the judgment void. *See Ex parte Seidel*, 39 S.W.3d 221 (Tex.Crim.App.2001) (citing *Hoang v. State*, 872 S.W.2d 694, 698 (Tex.Crim.App. 1993)).

In cases involving juveniles, however, the Legislature has imposed a preservation requirement on the type of jurisdictional complaint that Rushing asserts. TEX.CODE CRIM.PROC.ANN. art. 4.18. Thus, we must determine whether the Constitution prohibits the Legislature from withdrawing Rushing's right to appeal the jurisdictional issue. His argument is that the Separation of Powers Clause prohibits the Legislature from denying a court of appeals the right to review whether a trial court had jurisdiction in this particular type of case, and therefore article 4.18 is unconstitutional.

### Separation of Powers Clause

■ The Separation of Powers Clause states:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of

---

3. *See* TEX. CONST. art. V, § 31(c): "The legislature may delegate to the Supreme Court or Court of Criminal Appeals the power to promulgate such other rules as may be prescribed by law or this Constitution, subject to such limitations and procedures as may be provided by law." The Texas Supreme Court also has statutory authority to make civil rules of procedure. TEX. GOV'T CODE ANN. § 22.004 (Vernon Supp.2001).

which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX CONST. art. II, § 1. The provision is violated when: (1) one branch of government assumes a power "properly attached" to another branch, or (2) one branch unduly interferes with another branch effectively exercising its constitutionally assigned powers. *State v. Williams*, 938 S.W.2d 456, 458 (Tex.Crim.App.1997); *Jones v. State*, 803 S.W.2d 712, 715 (Tex.Crim.App. 1991). The first type of violation has to do with a usurpation of one branch's powers by another branch. The second type has to do with the frustration or delay of one branch's powers by another branch. *Rose v. State*, 752 S.W.2d 529, 532 (Tex.Crim. App.1987) (citing *Sanders v. State*, 580 S.W.2d 349, 352 (Tex.Crim.App.1978)). Rushing's alleged violation is of the second sort.

■ The issue is whether the Legislature, in exercising its legislative prerogative in enacting article 4.18, has so interfered with our constitutional right and obligation to exercise the judicial power granted to us by the Constitution that it has violated the Separation of Powers Clause. We believe that it has.

■ In *Meshell v. State*, a case which declared the Speedy Trial Act unconstitutional, the Court of Criminal Appeals held that the county attorney in a criminal case had the "exclusive prosecutorial discretion in preparing for trial," including when to be "ready" for trial. 739 S.W.2d 246, 256–57 (Tex.Crim.App.1987). The court stated that the Legislature cannot "infringe upon the substantive power of the Judicial department under the guise of establishing 'rules of court,' thus rendering the separation of powers doctrine meaningless." *Id.* at 255. Applying that reasoning here, because jurisdiction is a "nonwaivable, nonforfeitable systemic requirement" of a criminal proceeding, we hold that article 4.18, in the guise of a preservation rule, infringes on the "substantive power of the Judicial department" to decide the jurisdiction of a lower court.

In *Armadillo Bail Bonds*, the Court of Criminal Appeals cited *Legislative Control Over Judicial Rule–Making: A Problem in Constitutional Revision*, 107 U.Pa. L.Rev. 1, 29–32 (1958):

[T]here is a third realm of judicial activity, neither substantive nor adjective law, a realm of 'proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power.' This is the area of minimum functional integrity of the courts, 'what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is a court.' Any statute which moves so far into this realm of judicial affairs as to dictate to a judge how he shall judge or how he shall comport himself in judging or which seeks to surround the act of judging with hampering conditions clearly offends the constitutional scheme of the separation of powers and will be held invalid.

.　　.　　.　　.　　.

Should there not be some realm of judicial administration entirely free from legislative supervision? Or shall the legislature be permitted to dictate to the courts every detail of their internal regimen: command appellate courts to issue written opinions in every case, declare within what time cases shall be heard,

deny to the court the power to issue its mandate until a prescribed period of time after judgment shall have passed? There are spheres of activity so fundamental and so necessary to a court, so inherent in its very nature as a court, that to divest it of its absolute command within these spheres is to make meaningless the very phrase judicial power.

*Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 240–41 (Tex.Crim.App.1990).

■ In our view, article 4.18 infringes on that "realm of 'proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power.'" *See id.* The question of determining a lower court's jurisdiction is an "area of minimum functional integrity of the courts, 'what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is a court.'" *See id.*

We conclude that article 4.18 violates the Separation of Powers Clause to the extent that it requires that a jurisdictional complaint be presented to the trial court before it can be presented to an appellate court. Rushing's constitutional complaint is sustained, and we will address his jurisdictional issue.

### Review of Jurisdiction

This case was initially referred to the juvenile court, which in McLennan County is the 19th District Court presided over by Judge Ralph Strother. Within a month, the State filed in the 19th District Court, Cause No. 99–149–J, a "Petition for Discretionary Transfer to a District Court." The transfer is authorized by section 54.02(a) of the Family Code. Tex.Fam.Code. Ann. § 54.02(a) (Vernon Supp.2001). The statute allows the juvenile court, under certain circumstances applicable here, to waive its jurisdiction and transfer a minor to the appropriate district court for criminal proceedings in which the juvenile will be dealt with for all purposes as an adult. *Id.* at § 54.02(a), (h). Subsection "h" reads:

If the juvenile court waives jurisdiction, **it shall state specifically in the order its reasons for waiver and certify its action,** including the written order and findings of the court, **and shall transfer the person to the appropriate court for criminal proceedings** and cause the results of the diagnostic study of the person ordered under Subsection (d), including psychological information, to be transferred to the appropriate criminal prosecutor. **On transfer of the person for criminal proceedings, the person shall be dealt with as an adult and in accordance with the Code of Criminal Procedure. The transfer of custody is an arrest.** (Emphasis added).

After the statutorily required hearing on the State's petition to transfer, which was held on July 15, 1999, Judge Strother issued a "Waiver of Jurisdiction and Order of Transfer to Criminal Court." The order was filed in Cause No. 99–149–J in the 19th District Court on July 20, 1999. The order stated in part:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Court hereby waive its exclusive, original jurisdiction over the Juvenile Respondent, JONATHAN DANIEL RUSHING, and this cause, and immediately transfer this cause and the felony offense alleged in the State's Original Petition for Discretionary Transfer to Adult Criminal Court to the appropriate criminal district court, to wit: the 54th Judicial District Court of McLennan County, Texas.... IT IS FURTHER ORDERED AND DECREED by the said 19th Judicial District Court of McLennan County, Texas, that the clerk of said court transmit forthwith to the proper Criminal District Court of

McLennan County, Texas, this written order and findings of the said 19th Judicial District Court of McLennan County, Texas, and said complaint attached hereto.

Also on July 15, Judge Strother issued an "Order of Commitment of a Juvenile after Discretionary Transfer Hearing," which was filed with the district clerk on July 20 in Cause No. 99–149–J in the 19th District Court. The Order commanded any sheriff or constable to take Rushing into custody, take him to the McLennan County Jail, and detain him.

On July 19, Judge Derwood Johnson (visiting judge) issued an "Order Referring Case to Grand Jury," which was filed on July 20 in the same Cause No. 99–149–J, but in the 54th District Court. It said in part:

> IT IS THEREFORE ORDERED that this cause be and hereby is referred to the Grand Jury for action ... [and] that the Clerk of this Court prepare a transcript consisting of the [transfer] Order, the Certification, and the Complaint and transmit the same forthwith to the Grand Jury of McLennan County, Texas.

Rushing was indicted for capital murder on August 18, 1999, in the 54th District Court under a new Cause No., 99–579–C. The trial was held in January of 2000. Judge Strother presided.[4] After conviction, Notice of Appeal was filed on February 24, 2000.

While this appeal was pending, on December 12, 2000, the State filed in the original juvenile case, Cause No. 99–149–J in the 19th District Court, a "Motion to Transfer Records" requesting that all documents, including the transfer order, filed in cause No. 99–149–J be transferred to Cause No. 99–579–C in the 54th District

Court "in order that they may be made part of the appellate record in that cause." The Motion was granted by Judge Strother on December 27, 2000. We later received those documents by supplemental clerk's record.

■ It is not disputed that the orders concerning the transfer of the case from the 19th District Court to the "proper Criminal District Court" were never filed in Cause No. 99–579–C in the 54th District Court until after the appeal was filed. The issue is whether that shortcoming, if it was, caused the 54th District Court to lack jurisdiction to try the case. We conclude that it did not.

■ The July 15 transfer order directed the district clerk to "transmit forthwith to the proper Criminal District Court of McLennan County, Texas, this written order and findings of the said 19th Judicial District Court of McLennan County, Texas, and said complaint attached hereto." That was not done. However, neither the July 15 order nor section 54.02(h) requires that the transfer order actually be "filed" under the cause number of the case in the district court in which the adult proceedings occur. The key is whether (1) the juvenile court issued a proper transfer order, and (2) the transfer order was communicated to the judge in the adult-court proceedings, who accepted jurisdiction.

■ In *Ellis v. State*, the transfer order was not filed in the trial court until the appeal was filed. 543 S.W.2d 135 (Tex. Crim.App.1976). It was, as here, made available to the appellate court by supplemental clerk's record. *Id.* at 137. The Court of Criminal Appeals found that the order complied with section 54.02. Furthermore, in a transcript of an examining trial, the trial court referred to the order

---

4. The elected judge of the 54th District Court is the Honorable George Allen.

which he said was in his possession. The Court of Criminal Appeals stated:

> Regardless of whether the order of the juvenile court was actually on file with the papers in the case, the record reflects that the juvenile court had waived jurisdiction over appellant and had transferred it to the district court in which all subsequent criminal proceedings were had, and that the district court had such order in its possession and acted on the waiver and transfer and assumed jurisdiction when the examining trial was conducted before indictment was returned.

*Id.* Therefore, actual filing of the transfer order before trial with the court in the adult proceedings is not necessary, as long as the order is proper, and the trial court is aware of the order and assumes jurisdiction over the case.

In *Moss v. State,* the transfer order was misplaced and never filed. 13 S.W.3d 877 (Tex.App.—Fort Worth 2000, pet. ref'd). However, a copy was located, and after a hearing in the trial court to determine its authenticity, the appellate record was supplemented with the copy. In addition, other documents concerning the juvenile's waiver of an examining trial which were filed in the trial court clearly showed the trial court was aware of the transfer and accepted jurisdiction. The Fort Worth court found no authority, statutory or otherwise, requiring the transfer order to be filed in the trial court.

The July 15 transfer order complied with the requirements of section 54.02. Furthermore, because Judge Strother, the trial judge, signed the transfer order in his capacity as juvenile judge, he most surely was aware of the order and accepted jurisdiction of the matter in adult criminal court. The facts here accord with *Ellis*

and *Moss,* and we reach the same conclusion those courts did.

This issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

■ Rushing complains the evidence was neither legally nor factually sufficient to support his conviction. More specifically, he says the evidence did not prove he had the intent to commit robbery when he killed Burgess. In a capital murder like Rushing's under section 19.03(a)(2) of the Penal Code, *i.e.,* murder committed in the course of committing a robbery, the defendant must have the intent to rob the victim before or during the murder. Tex.Pen. Code Ann. § 19.03(a)(2) (Vernon 1994); *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex. Crim.App.1995). Rushing claims that at most the evidence shows the robbery was an afterthought which occurred after the murder.

■ In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State,* 933 S.W.2d 504, 507 (Tex. Crim.App.1996) (citing due process standard from *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ In contrast, in reviewing a challenge to the factual sufficiency of the evidence, we must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *Perkins v. State,* 19 S.W.3d 854, 855 (Tex.App.—Waco 2000, pet. ref'd). We ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's deter-

mination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof" to the extent that the finding of guilt "is clearly wrong and manifestly unjust." *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000).

■ Rushing does not cite to the record on these issues, and does not refer to any evidence or lack thereof to support his complaints. However, the record shows the following incriminating evidence against Rushing.

- Rushing lived near Burgess.
- Rushing's fingerprints were found on Burgess's abandoned car, which was stolen at the time of the murder. A discarded knife from Burgess's home was found in the area near the car.
- The keys to Burgess's car were found in clothing belonging either to Rushing or another boy at the foster home.
- Rushing's shirt was found at Burgess's home, and DNA evidence proved Burgess's blood was on it.
- Rushing made incriminating statements to his juvenile probation officer, Salazar, that Rushing and his accomplice planned to run away from the foster home. They needed a car, and planned to steal Burgess's car and to stab him if necessary. In the process, Rushing stabbed Burgess and slit his throat. Rushing got blood on his shirt, took off his shirt, and got one of Burgess's to wear. Rushing went through Burgess's pockets and found the car keys. Then he and the accomplice left the scene in Burgess's car, taking the murder knife, which was later discarded. The car broke down and was abandoned. Rushing was not sure Burgess was dead when he left the scene of the murder.
- Rushing made an incriminating statement to a roommate that Rushing had

stabbed an old man and slit his throat, and that he did it to steal his car.

- When he was arrested for the offense by Detective Spillman, who told him that he was being arrested for capital murder, Rushing made a statement that "the old man shouldn't have come at him with scissors."

We find that, based on this evidence, a rational trier of fact could have found the essential elements of a capital murder to convict Rushing beyond a reasonable doubt. *Lane,* 933 S.W.2d at 507. As noted, there is no "contrary proof" on the element of intent. Thus, after considering all of the evidence neutrally, we find that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson,* 23 S.W.3d at 11. Consequently, we hold that the evidence is legally and factually sufficient to support the verdict, and we overrule Rushing's factual and legal sufficiency complaints.

## THE LEG RESTRAINT

Rushing was required to wear a hobbling leg brace during trial. His trial lawyer complained that the brace under Rushing's pants could be detected around his shoe by jurors, whose attention would be drawn to it because of the sound it made when Rushing walked and because the brace would cause him to limp. Rushing claims there was no evidence that he was a flight or security risk.

■ Restraining a defendant in front of the jury infringes the presumption of innocence, and should be avoided unless there is an exceptional circumstance or a manifest need. *Long v. State,* 823 S.W.2d 259, 282 (Tex.Crim.App.1991); *Brown v. State,* 877 S.W.2d 869, 871 (Tex.App.—San Antonio 1994, no pet.). The issue is reviewed for abuse of discretion; the record should show the facts on which the trial

court made its decision. *Long,* 823 S.W.2d at 282–83; *see Marquez v. State,* 725 S.W.2d 217, 227 (Tex.Crim.App.1987).

■ However, as the State points out, there is nothing in the record to prove that any juror ever noticed the leg brace. Absent this evidence, Rushing cannot show harm. *E.g., Long,* 823 S.W.2d at 283; *Brown,* 877 S.W.2d at 871; TEX.R.APP.P. 44.2. The issue is overruled.

## UNDISCLOSED WITNESS

The State called Clara Burgess, the victim's daughter-in-law, to testify. She identified a car, and a butcher knife found near the car, as both belonging to the victim. Rushing objected that she was not on the State's witness list. The trial court overruled the objection. Rushing claims his Sixth Amendment right to confront the witnesses against him was violated. U.S. CONST. amend. VI. Rushing did cross-examine the witness at trial.

■ This issue is reviewed for abuse of discretion, which is evaluated against whether the State's actions were in bad faith, and whether the defendant could have reasonably anticipated the witness's testimony. *Campbell v. State,* 900 S.W.2d 763, 772 (Tex.App.—Waco 1995, no pet.). Furthermore, even if there is an abuse of discretion, if the defendant fails to move for a continuance to have more time to prepare for cross-examination of the witness, any error is rendered harmless. *Barnes v. State,* 876 S.W.2d 316, 328 (Tex. Crim.App.1994); *Gonzales v. State,* 4 S.W.3d 406, 416 n. 6 (Tex.App.—Waco 1999, no pet.).

■ The record shows that this witness was disclosed to the defense the morning of the day before voir dire began. The State offered no explanation about why the witness's name had not been previously provided. However, Rushing did not request a continuance. Therefore, assuming the trial court abused its discretion, there is no harm. *Barnes,* 876 S.W.2d at 328; TEX.R.APP.P. 44.2. The issue is overruled.

## CRIME SCENE PHOTOGRAPH

■ Rushing complains that a gruesome crime-scene photograph of Burgess's wounds should not have been admitted into evidence. Rushing objected at trial that the photograph's probative value was substantially outweighed by its prejudicial effect. TEX.R.EVID. 403. The admissibility of a photograph is within the discretion of the court and is reviewed for abuse of discretion. *Kelley v. State,* 22 S.W.3d 642, 644 (Tex.App.—Waco 2000, no pet.). We will not find error in a trial court's evidentiary ruling unless the ruling falls outside "the zone of reasonable disagreement." *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

■ When a trial court conducts a Rule 403 balancing test regarding a photograph, it must first determine if the photograph is probative of some relevant fact. As it was in this case, a crime scene photograph is almost always relevant, because it "depict[s] the reality of [the] offense," and that it happened as the State alleges. *Chamberlain v. State,* 998 S.W.2d 230, 237 (Tex.Crim.App.1999); *Fuller v. State,* 829 S.W.2d 191, 207 (Tex.Crim.App.1992). In addition, this photograph was probative of Rushing's intent to kill, because it showed a vicious knife attack with multiple stab wounds.

■ Next, in determining the prejudicial effect of the photograph, the trial court should consider "the number of photographs, the size of the photograph, whether it is in color or black and white, the detail shown in the photograph, whether the photograph is gruesome, whether

the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment." *Reese v. State,* 33 S.W.3d 238, 241 (Tex.Crim.App.2000); *Chamberlain v. State,* 998 S.W.2d at 237. The photograph was taken of Burgess lying on his back. It is an eight-inch by ten-inch color picture showing him from the waist up. His shirt has been pulled up to reveal stab wounds to his chest. The wound to his throat is also visible. The photograph is gruesome and might be prejudicial; but we do not find that any prejudicial effect substantially outweighs its probative value. Tex.R.Evid. 403. The trial court did not abuse its discretion.[5] This issue is overruled.

## RUSHING'S STATEMENTS

David Salazar, a Juvenile Probation Officer, was assigned to Rushing at the McLennan County Juvenile Detention Center where Rushing was held. Part of Salazar's regular duties was to visit with the juveniles on his case load, almost on a daily basis, to inform them of the status of their cases such as upcoming court proceedings, and to deal with any disciplinary or other problems the juveniles might be having. Salazar testified at trial that during some of his conversations with Rushing, the juvenile volunteered highly incriminating statements describing the crime and Rushing's role in it. Rushing filed a motion to suppress these statements, which was denied. Rushing claimed that Salazar was acting as an agent of law enforcement, and that the conversations were "custodial interrogations" conducted without Rushing being given his *Miranda* rights.

At the pre-trial hearing on the motion to suppress, the State stipulated that Rushing was in custody during the conversations. Salazar testified that his responsibilities did not include investigating the offenses for which juveniles were being held, that he never asked Rushing any questions about his offense, and that any incriminating statements made by Rushing were voluntarily offered. He said that before Rushing made the first incriminating statements, he had been before a magistrate and received his warnings, which include *Miranda* warnings, and that he had been appointed an attorney who had visited Rushing at the juvenile facility. Tex.Code Crim.Proc.Ann. arts. 14.06, 15.17 (Vernon Supp.2001).

Salazar testified that the conversations usually occurred in the late afternoon in the day-room of the juvenile detention center. The day room is an open area, and other detention center personnel are always present. Whenever Rushing began to describe details of the crime, Salazar would tell him: "Jonathan, you have an attorney. You need to tell your attorney this. I can't help you in this matter." Salazar said: "I took it at that point that he really didn't have anybody to talk to and he wanted to get things off his mind . . . and he just needed somebody to vent to." Salazar also said: "I never make it a point to question anybody. Especially in a high profile case as this, I never solicited any information that would jeopardize the case." Salazar said Rushing was adamant about getting to court as soon as possible; he said he would confess to the crime, and he wanted to "get his time done with." Salazar did not leave when Rushing began

---

5. Even if admitting the photograph had been error, the error was harmless. We will not reverse for evidentiary errors that do not affect substantial rights. Tex R.Evid. 103(a); Tex.R.App.P. 44.2(b). Considering all the evidence and the probable impact the photograph had on the jury, we do not believe admitting the photograph affected the verdict.

talking about the offense because "the whole thing was to get past that conversation so that I could get at the matter at hand which is his behavior in detention and what he needed to do to keep out of trouble and to make his stay in detention easier."

 A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). The trial court's findings of fact are given "almost total deference," and in the absence of explicit findings, the appellate court assumes the trial court made implicit findings which were supported in the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim. App.2000); *Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). The application of the relevant law to the facts (including Fourth Amendment search and seizure law) is reviewed *de novo*. *See Carmouche*, 10 S.W.3d at 327.

 A confession is illegal and must be suppressed if it is obtained pursuant to a "custodial interrogation" without the benefit of *Miranda* warnings. *E.g., McCambridge v. State*, 712 S.W.2d 499, 504–05 (Tex.Crim.App.1986); *DeLeon v. State*, 758 S.W.2d 621, 624–25 (Tex.App.—Houston [14th Dist.] 1988, no pet.). In addition to suppression under federal constitutional law, in Texas we have statutory suppression. Articles 38.21 and 38.22 of the Code of Criminal Procedure set forth requirements which must be met before a defendant's statements are admissible against him. Tex.Code Crim.Proc.Ann. arts. 38.21, 38.22 (Vernon Supp.2001). Similar provisions are contained in section 51.095 of the Family Code. Tex.Fam.Code Ann. § 51.095 (Vernon Supp.2001). If these requirements are violated, article 38.23(a) applies:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Tex.Code Crim.Proc.Ann. art. 38.23(a) (Vernon Supp.2001).

In this case the State stipulated to "custody." Therefore the issue under common law or the Texas statutes is whether Rushing was being "interrogated" by Salazar when Rushing incriminated himself. If he was not, the issue of whether Rushing was given his *Miranda* rights is irrelevant. Likewise, if Salazar did not "interrogate" Rushing, whether or not Salazar was acting as an agent of law enforcement is irrelevant. *Wicker v. State*, 740 S.W.2d 779, 785 (Tex.Crim.App.1987) ("custodial interrogation" applies only to "questioning initiated by law enforcement officers" after being taken into custody).

 There is nothing in the record to support a contention that Salazar expressly "interrogated" Rushing. The record shows that Rushing volunteered, against Salazar's advice, details about the crime during routine visits with his probation officer (Salazar).

Rushing's reliance on *Henson v. State*, 794 S.W.2d 385 (Tex.App.—Dallas 1990, pet. ref'd), is misplaced. There a citizen interrogated the defendant and obtained incriminating statements. The issue was whether the citizen was acting as an agent of law enforcement, because the interrogation was part of a "calculated practice which all agents of the State involved knew was reasonably likely to evoke an incriminating response from" the defendant. *Id.* However, unlike Rushing's case, in *Henson* there was an express "interrogation."

Rushing also relies on *Wortham v. State*, 704 S.W.2d 586 (Tex.App.—Austin 1986, no pet.). There the defendant was transported to jail in a patrol car by two sheriff's

deputies. There was a conservation between the three during the trip, which consisted of small talk, questions by one of the officers about why the defendant committed the crime and whether the defendant "wanted to go ahead and talk to us," and a number of incriminating statements by the defendant. The court discussed the meaning of "interrogation." The court quoted *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

> [T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its **functional equivalent.** That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are **reasonably likely to elicit an incriminating response** from the suspect. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. (Emphasis added).

*Wortham,* 704 S.W.2d at 589 (citing *Innis,* 446 U.S. at 300–01, 100 S.Ct. at 1689) (footnotes omitted). The court held that there had been an express "interrogation" of the defendant.

■ Rushing says that because of his age, the seriousness of the offense, and the daily visits by Salazar, the conversations were reasonably likely to cause Rushing to make an incriminating statement, and therefore the conversations were the functional equivalent of an interrogation. However, questioning which is "normally attendant to arrest and custody" is not interrogation. *McCambridge,* 712 S.W.2d at 505 (citing *Innis,* 446 U.S. at 300–01, 100 S.Ct. at 1689–90); *DeLeon,* 758 S.W.2d

at 625. The record shows that any questions Salazar may have asked Rushing concerned routine custodial matters such as how Rushing was getting along in detention, or whether Rushing had any questions about the status of his case. These questions, "normally attendant to arrest and custody," are not an "interrogation."

We do not find that the court misapplied the law to the undisputed facts. *Carmouche,* 10 S.W.3d at 327. The issue is overruled.

## LESSER–INCLUDED OFFENSE

Rushing requested that the jury be instructed on the lesser-included offense of murder. The request was denied, and Rushing complains on appeal that the trial court erred in denying his request.

■ If there is some evidence that if a defendant is guilty, he is guilty only of a lesser-included offense, then the defendant is entitled to have the jury instructed that it may find the defendant guilty only of the lesser-included offense. *Wesbrook v. State,* 29 S.W.3d 103, 113 (Tex.Crim.App.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). "The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense." *Id.* (citing *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex. Crim.App.1993)). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim.App. 1994).

■ Rushing claims that Salazar's testimony that Rushing told him Rushing did not think he had killed Burgess, but that instead Burgess was alive when Rushing left the scene, is some evidence negating the element of Rushing's intent. We think Appellant's argument is misplaced. The difference in this case between capital

murder and regular murder has to do with whether Rushing intended to rob Burgess before or at the time of the murder, not with whether Rushing intended to kill Burgess. What Rushing told Salazar about Burgess perhaps not being dead has nothing to do with the distinction between the elements of capital murder and murder. We also believe that, based on the evidence of Rushing's statements, and no evidence to the contrary, he intended to rob Burgess, and no rational jury could have believed the robbery of the car was merely an afterthought. *Wesbrook*, 29 S.W.3d at 113.

The issue is overruled.

## DEADLY WEAPON FINDING

The Code of Criminal Procedure requires that when there is an "affirmative finding" that the defendant used a "deadly weapon" during the commission of an offense, the trial court must enter the finding in the judgment. TEX.CODE CRIM.PROC. ANN. art. 42.12 § 3g(a)(2) (Vernon Supp. 2001). The trial court here entered a "deadly weapon" finding.

■■■ Rushing complains that when a jury is the finder of fact, the trial court may not enter a "deadly weapon" finding in the judgment unless: (1) the indictment includes an allegation of a "deadly weapon," and the jury finds the defendant guilty as alleged in the indictment, (2) the indictment does not allege "deadly weapon," but does allege a weapon that is per se a deadly weapon, and the jury finds the defendant guilty as alleged in the indictment, or (3) the jury has affirmatively answered a special issue on "deadly weapon" use. *Davis v. State*, 897 S.W.2d 791, 793 (Tex.Crim.App.1995). None of those three occurred in this case. Appropriately, the State has admitted error on this issue. We sustain the issue, and will modify the judgment to delete the "deadly weapon" finding. TEX.R.APP.P. 43.2(b).

## CONCLUSION

The judgment is modified to delete the deadly weapon finding and, as modified, is affirmed.

Judgment modified and affirmed

GRAY, J., filed a concurring opinion.

GRAY, Justice, concurring.

The majority concludes that the separation-of-powers doctrine has been violated because the legislature has impermissibly interfered with our ability to review a trial court's jurisdiction. The majority seems to recognize that the legislature can preclude us from having jurisdiction to review certain types of cases, but refuses to allow the legislature the latitude to impose certain restrictions that must be complied with before we can review an issue on direct appeal.

I have no problem in recognizing that the legislature has the authority under the constitution to set certain procedural hurdles that must be overcome before a particular issue may be reviewed by us on direct appeal. If the legislature chooses to require a certain type of preservation for jurisdictional issues at the trial court level in criminal cases before we have jurisdiction for appellate review, that is within their province.

In this particular case, it means that if Rushing wants to challenge the trial court's jurisdiction, it must be done by some other procedure, presumably an application for writ of habeas corpus, not by direct appeal. This makes a lot of sense in this context. If the trial court had refused to order the record supplemented with the records of the juvenile proceeding, we would be unable to determine if the trial

court's jurisdiction had been properly invoked as it pertains to a juvenile. But if challenged by application for writ of habeas corpus, an appropriate record could be made, showing that the juvenile court had in fact relinquished exclusive jurisdiction and that the case had properly proceeded to trial on the indictment in the criminal district court.

I would recognize that the legislature may limit the procedural manner in which an issue must be presented for us to have jurisdiction to review it, even if it involves the trial court's jurisdiction. Because the majority holds otherwise, I respectfully note my disagreement with that portion of the opinion. Because the majority reaches the same result by concluding that the record supports the fact that the juvenile court waived jurisdiction and that it was accepted by the criminal district court, I concur in the result.

One further note. As I view it, the holding of the majority is very narrow. The only issue is whether the legislature may prevent us from reviewing a challenge to a trial court's jurisdiction by imposing a preservation requirement. The holding should be strictly limited to these facts.

## ORDER DENYING MOTION FOR REHEARING

VANCE, Justice.

■ Rushing complains in his Motion for Rehearing that our opinion did not address whether the clerk's record was properly supplemented to this court. The supplemental record contains various documents from the juvenile court proceeding, especially the order transferring the cause from juvenile court to adult court. We note that Rushing cites to Tex.R.App.P. 47.1 and *Light v. State,* 15 S.W.3d 104, 105 (Tex.Crim.App.2000), for the proposition that the opinion must address every issue

raised on appeal. However, this rule and case pertain to briefed issues. Rushing's complaint about the supplemental record was contained in objections to this court requesting that we not allow supplementation of the record with the documents from the juvenile proceeding. We denied the objections. Rushing did not raise a point of error on the issue in his brief. Therefore, Rule 47.1 and *Light* do not support his complaint. Nevertheless, because the contents of the supplemental record are pivotal to our opinion, we will discuss this issue.

■ Rushing's argument is that the records from the juvenile proceeding are from a different cause, filed under a different cause number in the district clerk's office. Therefore, they cannot be a part of the record in the adult cause. We do not agree.

The supplemental record shows that the juvenile court issued an order on December 27, 2000, that the district clerk transfer certified copies of all papers filed in the juvenile cause to the adult cause. On that same date, the State filed a "Designation of Supplemental Clerk's Record" under the adult cause number, requesting that the appellate record be supplemented with the documents. On January 4, 2001, the clerk filed under the adult cause number certified copies of all the juvenile-cause documents. Then, copies of these certified records, certified by the clerk as accurate copies, were supplemented to this court on January 5, 2001. Therefore, we find that the records supplemented to us were properly filed in the adult cause, and accordingly were properly included as part of the clerk's record in the adult cause.

We deny the motion for rehearing.