In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00002-CR
______________________________


DAVID DRICHAS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 02-F-0711-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          David Drichas was convicted by a jury for evading detention with a motor vehicle. 
See Tex. Pen. Code Ann. § 38.04(a), (b)(1) (Vernon 2003). The jury also found that, during
the commission of the offense, Drichas used his vehicle as a deadly weapon. See Tex.
Pen. Code Ann. § 12.35(c)(1) (Vernon 2003). Drichas pled true to allegations in the
indictment under the habitual felony offenders statute, and the jury assessed his
punishment at ninety-nine years' imprisonment. See Tex. Pen. Code Ann. § 12.42(d)
(Vernon Supp. 2005). The trial court sentenced Drichas in accordance with the jury's
verdict. Drichas appealed, contending, among other things, that the evidence supporting
the jury's affirmative deadly weapon finding was legally and factually insufficient. 
          In our original opinion, Drichas v. State, 152 S.W.3d 630 (Tex. App.—Texarkana
2004), rev'd, 175 S.W.3d 795 (Tex. Crim. App. 2005), we conducted the requisite review
of all the evidence, with specific reference to and application of that evidence required by
a sufficiency review. After detailing the evidence and applying the sufficiency review, we
concluded the evidence presented by the State was both legally and factually insufficient
to support the deadly weapon finding. Accordingly, we deleted the finding, and because
the ninety-nine-year sentence imposed was well above the twenty-year maximum for the
offense without the finding, we remanded for a new trial on punishment only.
          The Texas Court of Criminal Appeals concluded there was some evidence that the
vehicle was a deadly weapon. The court reversed that portion of our opinion and
remanded to this Court "for a factual-sufficiency analysis consistent with [its] opinion."


 
          In its own analysis, the Court held that:
While the court of appeals is correct in noting that the danger posed to
motorists must be actual, and not simply hypothetical, the statute itself does
not require pursuing police officers or other motorists to be in a zone of
danger, take evasive action, or require appellant to intentionally strike
another vehicle to justify a deadly weapon finding. The volume of traffic on
the road is relevant only if no traffic exists. Williams, 946 S.W.2d at 435–36.


 
The plain language of the statute indicates that a deadly weapon finding will
be sustained if the definition of a deadly weapon is met. Capability is
evaluated based on the circumstances that existed at the time of the offense. 
Williams, 946 S.W.2d at 435. The statute specifically pertains to motor
vehicles, so a deadly weapon finding is appropriate on a sufficient showing
of actual danger, such as evidence that another motorist was on the highway
at the same time and place as the defendant when the defendant drove in
a dangerous manner. Mann, 13 S.W.3d at 92. We do not suggest that a
defendant should be charged with using a vehicle as a deadly weapon every
time the offense of evading arrest or detention is committed. The
determination to seek a deadly weapon finding in those circumstances is a
fact-specific inquiry, and the facts will not always support such a finding.
Drichas, 175 S.W.3d at 799 (footnote added).
          Thus, the court stated that, although the danger to some other motorist must be
actual (not just hypothetical), some unspecified degree of proximity is necessary to show
that actual danger existed, even though no person was actually endangered. See id. As
more clearly indicated in its opinion, the court was not suggesting that the mere existence
of some other motorist somewhere on the roadway is sufficient to provide the necessary
showing that the defendant's use of the vehicle placed that person in actual danger. See
id. To so construe the court's opinion would eviscerate the requirement that an actual,
rather than hypothetical, person be endangered by the way in which the vehicle was used.
          We have reviewed the record, as specifically directed, for "evidence that another
motorist was on the highway at the same time and place as the defendant when the
defendant drove in a dangerous manner." Id.


 Although there is no concrete evidence to
that effect, there are two statements from Texarkana, Arkansas, police officer Lieutenant 
Dwight Mowery that touch on this issue. The following exchange contains these two
statements and the context in which the statements were made:
Q.Was there a lot of traffic out?
 
A.No, there wasn't a lot. There was some.
 
Q.Now, during the course of this route that you took, did you at
any time see the truck attempt to run over anybody?
 
A.No.
 
Q.Did you see anybody having to swerve to get out of the way or
move rapidly to get out of the way of this truck?
 
A.Other than me there at the store. No, I didn't see anything,
other than me, having to avoid an accident.



 
Q.Did you see the driver in any way point the truck towards
someone or some vehicle in an attempt to run them down or harm them in
any way?
 
A.No. I did observe the defendant driving the wrong way on the
highway, though.
 
Q.I understand, but my question was he didn't point his vehicle
at any person or any other vehicle in an attempt to run them down.
 
A.Well, it was certainly pointed in the wrong direction at that
point. I'm not certain of this, but we were meeting some traffic somewhere
around that point there.
 
Q.You never saw anybody have to swerve to get out of his way?
 
A.No.

(Emphasis and footnote added.)
          When reviewing a challenge to the factual sufficiency of the evidence to support the
jury's finding, the court must determine whether, considering all the evidence in a neutral
light, the jury was rationally justified in its finding beyond a reasonable doubt. Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). 
          The Texas Court of Criminal Appeals has opined that there are two ways in which
we may find the evidence to be factually insufficient. First, if the evidence supporting the
finding, considered alone, is too weak to support the jury's finding beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the
evidence supporting and contravening the finding—we conclude that the contrary evidence
is strong enough that the State could not have met its burden of proof, we must find the
evidence insufficient. Id. at 485.
          First, considering only the evidence supporting the affirmative deadly weapon
finding, we conclude the evidence is factually insufficient. As Mowery clearly concedes in
the second italicized statement, he is uncertain even about the presence of other motorists. 
Second, from his statements, one cannot determine where or when the "traffic" was
encountered, or even if it was on the same roadway or on a nearby road. Thus, one can
neither ascertain directly, or by inference, proximity of the "traffic," either in time or space
to Drichas' vehicle. 
          The Texas Court of Criminal Appeals' opinion directs us to examine the record for
evidence that there were other motorists present at the "same time and place" as the
reckless driving occurred. With the exception of the pursuing officers, we simply do not
have that in this record.


 While it is likely that, somewhere in Texarkana, there were other
motorists on the roadways in those early morning hours, the record before us does not
demonstrate in a factually sufficient manner that Drichas and the pursuing officers ever
encountered motorists in such a way as to place another in actual danger. The evidence
that there may have been some unknown quantity of traffic at some unknown point, at
some unknown time, during the pursuit is too weak to support the jury's finding beyond a
reasonable doubt. See id. at 484. The evidence is too weak to directly support the verdict,
and the evidence as a whole is so bound by internal qualifications that no reasonable juror
could infer that Drichas ever encountered any other motorist in such a way as to place that
motorist in actual danger because of the way Drichas was operating his vehicle. We must
therefore conclude that evidence, considered alone, is too weak to support the jury's
finding beyond a reasonable doubt. See id.
          Examining the record to review the second way in which the evidence may be
factually insufficient, we look to the testimony of Texarkana, Texas, police officer Jason
Woolridge, who took over the primary pursuit when Drichas entered Texas. In the following
excerpt, he describes what he saw when first encountering Drichas and Mowery as they
drove into Texas:
Q.. . . When you -- The place that you were at, were you blocking the
intersection in any way?
 
A.No, ma'am.
 
Q.You were actually kind of like off the side of the road?
 
A.I was in the far southbound lane.
 
Q.There -- And I believe you said that the only vehicle that you
saw besides the truck was Lieutenant Mowery's?
 
A.Yes, ma'am.

Woolridge also explains that he did not see any other vehicles until the other police units
caught up with him at the point when Drichas turned his vehicle around, several miles after
Woolridge took over and near the end of the pursuit:
Q.And you did not see any other cars whatsoever until you got
pretty close up to the turnaround there at the Sulphur River bridge?



 
A.Yes, ma'am. [Apparently affirming that he saw no other cars.]
 
Q.So it was just the two of you.
 
A.That I could see.

(Footnote added.)
          When measuring Mowery's general, uncertain statements, that there may have
been some traffic at some point, against the evidence to the contrary, we conclude that the
contrary evidence is strong enough that, on this record, the State could not have met its
burden of proof. See Zuniga, 144 S.W.3d at 485. Woolridge clearly states that he saw no
other vehicles at the time he took over the chase into Texas and that he saw no other
vehicles until the other units caught up with him near the end of the pursuit.


 
          In light of the higher court's opinion, we note that we do not base this conclusion on
the quantity of traffic that may or may not have been encountered. Nor do we measure the
probability that another motorist who was present was endangered by Drichas. Rather, we
measure solely the sufficiency of the evidence that there was another motorist present on
the roadway "at the same place and time" as Drichas when he drove in a reckless manner. 
          Again, the two statements by Mowery regarding the possibility that Drichas and the
pursuing officer may have encountered "some traffic" at some point is factually insufficient
when measured by the appropriate factual sufficiency standards to allow a jury to conclude
beyond a reasonable doubt that the vehicle, as used by Drichas, was a deadly weapon. 
Further, when viewed in a neutral light and weighed against contrary evidence found in
Woolridge's testimony, the State could not have met its burden of proof. The evidence
supporting the deadly weapon is factually insufficient. 
          As pointed out by the Texas Court of Criminal Appeals, reversal of the judgment and
remand for a new trial is the proper remedy when a court of appeals finds that evidence
is factually insufficient. Drichas, 175 S.W.3d at 799; Zuniga, 144 S.W.3d at 482. 
          Accordingly, we reverse the deadly weapon finding, based on the factual
insufficiency of the evidence, and remand for a new trial on that issue.





                                                                Donald R. Ross
                                                                Justice

Date Submitted:      January 25, 2006
Date Decided:         January 27, 2006

Publish



e same or less than all the facts required to establish the commission of the offense charged." 
Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1979). In this case, murder is a lesser-included
offense of capital murder, because it is established by the same facts as capital murder. 
            The second part of the test requires us to determine whether there is "some evidence" from
which a rational jury could conclude the defendant is guilty only of the lesser-included offense, not
the greater offense. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); see Rousseau, 855
S.W.2d at 673. Meeks argues the jury should have been instructed on the lesser-included offense
of murder because the jury could have reasonably concluded based on the evidence that the killing
of the deceased was not committed in the course of committing robbery. The State did not present
any evidence Meeks personally asked Blackmon for money immediately before the attack. Sheila
testified Meeks started stabbing Blackmon as soon as the door of the truck was opened. It was not
until the body was being moved to another apartment complex that Meeks took money from
Blackmon.
            Meeks argues the jury could have concluded that the robbery was an afterthought and that
the murder was not committed in the course of a robbery. The defendant's intent to rob must be
formed before or at the time of the murder to qualify as capital murder. Alvarado v. State, 912
S.W.2d 199, 207 (Tex. Crim. App. 1995). If the defendant committed the theft as an afterthought
and unrelated to the murder, he or she did not commit capital murder. Id. at 207; Moody v. State,
827 S.W.2d 875, 892 (Tex. Crim. App. 1992). Meeks argues that, because a rational person could
conclude the murder did not occur in the course of a robbery, she was entitled to an instruction on
the lesser-included offense.
            Meeks fails to meet the second part of the Royster test because no evidence was presented
that she was guilty of only murder. See Rushing v. State, 50 S.W.3d 715, 732 (Tex. App.—Waco 
2001), aff'd, 85 S.W.3d 283 (Tex. Crim. App. 2002). Similar to the circumstances examined in
Rushing, no evidence was presented Meeks murdered Blackmon for a reason other than money. "It
is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather,
there must be some evidence directly germane to a lesser-included offense for the factfinder to
consider before an instruction on a lesser-included offense is warranted." Cantu v. State, 939 S.W.2d
627, 646 (Tex. Crim. App. 1997); see Macias v. State, 959 S.W.2d 332, 336 (Tex. App.—Houston
[14th Dist.] 1997, pet. ref'd). The evidence indicates Meeks sought money from the victim. Ample
evidence was presented that she formed an intent to take money from the victim before the murder,
and did rob him. No evidence raises only the lesser offense of murder, and the trial court did not
abuse its discretion in denying the instruction on the lesser offense of murder.
            For the reasons stated, we affirm the judgment of the trial court.
 

 
                                                                        Jack Carter
                                                                        Justice

Date Submitted:          January 26, 2004
Date Decided:             February 6, 2004

Publish