In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00142-CR
______________________________


KIMBERLY YVONNE MEEKS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 283rd Judicial District Court
Dallas County, Texas
Trial Court No. F02-01246-T


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Kimberly Yvonne Meeks appeals her conviction by jury trial of capital murder of Paul
Blackmon. Meeks raises six issues on appeal. Meeks argues the trial court erred in 1) sustaining
the State's objections to extraneous unlawful acts committed by witnesses Sheila Skelton and
Veronica Skelton, 2) failing to charge the jury that the testimony of Veronica Skelton required
corroboration if the jury found she was an accomplice, and 3) failing to charge the jury that the
testimony of Veronica Skelton required corroboration because she was an accomplice as a matter
of law. In points of error (4) and (5), Meeks contends there is factually and legally insufficient
evidence to support the jury's finding that the murder was committed in the course of a robbery. In
her last point of error, Meeks argues the trial court erred by denying her request for a jury instruction
on the lesser-included offense of murder. We affirm the judgment of the trial court.
            At the time of the murder, Meeks and her accomplice, Sheila, were staying with Sheila's
mother, Alice Dunn, in an apartment at 1006 Maryland. Sheila's fourteen-year-old niece, Veronica,
was spending the weekend at the apartment, which she did often. 
            On the evening of January 4, 2002, Sheila asked her son, Danny Lopez, to give her and
Meeks a ride to Charlene's, a bar on Harry Hines Boulevard. Lopez dropped the women off at the
bar sometime before 11:00 p.m. that evening. At the bar, Sheila and Meeks met Blackmon, the
victim. Sheila and Meeks asked Blackmon for a ride home, to which he agreed. On the way home,
the group stopped at the Royal Inn and Blackmon gave Sheila money to buy crack cocaine and
retrieved some marihuana, which he had stashed under the hood of his pickup truck. 
            When Blackmon, Meeks, and Sheila arrived home, Veronica joined Sheila and Meeks in
smoking the marihuana and crack cocaine. While Blackmon also participated in the smoking of
marihuana, he did not smoke any of the crack cocaine. When the group started getting sleepy, Sheila
insisted Blackmon leave so that they could lock the apartment and sleep. Blackmon decided to sleep
in his truck because he felt he was too intoxicated to drive. Sheila provided him with a blanket and
pillow. Later, Meeks awoke Sheila and asked her to go ask Blackmon for some more money for
drugs. Meeks stated that she knew he had more money. When Blackmon refused to give Sheila any
more money for drugs, Meeks sent Veronica out to get money. Blackmon still refused to provide
any more money. 
            According to Sheila and Veronica, Meeks became angry and started talking about killing
Blackmon. Meeks then went outside armed with a kitchen knife. Sheila followed shortly behind
Meeks and observed Meeks repeatedly stab Blackmon. Veronica, who remained at the door of the
apartment, observed Meeks appear to stab Blackmon. After Blackmon managed to get the door of
the truck shut, Sheila testified that she told Meeks she would "finish" Blackmon. Sheila testified that
Meeks handed her a small pocketknife and then returned to the apartment. According to Sheila, she
got inside the truck and attempted to comfort Blackmon. Sheila testified that she did not stab
Blackmon. Sheila called Veronica closer and told her to go and get Meeks, which Veronica did. 
When Meeks returned to the truck, Sheila and Meeks drove to the nearby Fannidella Apartments and
disposed of Blackmon's body. While on the way to the apartments, Sheila testified that Meeks took
money from Blackmon's wallet. Meeks and Sheila then returned to the apartment and cleaned up
the scene and themselves. Both Sheila and Veronica testified that Veronica did not participate in
the murder, clean-up, or the disposal of Blackmon's body and truck. 
            Around 6:45 a.m., a tenant at the Fannidella Apartments found Blackmon lying in a pool of
blood in the apartment parking lot. The medical examiner testified that Blackmon died from six stab
wounds. 
Extraneous Unlawful Acts 
            In his first point of error, Meeks argues the trial court erred in refusing to allow evidence that
Veronica and Sheila were involved in drug dealing and prostitution together. Outside the presence
of the jury, Veronica testified that, at Sheila's request, Veronica had previously sold drugs and
engaged in prostitution, and was a runaway at the time of the murder. 
            Absent an abuse of discretion, an appellate court should not disturb a trial court's evidentiary
ruling. Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g); see
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "[A]s long as the trial court's ruling
was at least within the zone of reasonable disagreement, the appellate court will not intercede." 
Montgomery, 810 S.W.2d at 391. 
            The Texas Rules of Evidence prohibit the use of specific unadjudicated acts to impeach a
witness. Rule 608(b) provides that:
Specific instances of the conduct of a witness, for the purpose of attacking or
supporting the witness' credibility, other than conviction of crime as provided in Rule
609, may not be inquired into on cross-examination of the witness nor proved by
extrinsic evidence.
Tex. R. Evid. 608(b). Rule 608(b) prohibits "the utilization of specific instances of conduct . . . for
impeachment except to expose bias, correct any affirmative misrepresentations made on direct
examination, or demonstrate lack of capacity." Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim.
App. 1997); see Blevins v. State, 884 S.W.2d 219, 229 (Tex. App.—Beaumont 1994, no pet.) (false
impression). 
            Meeks contends the specific acts indicate a close relationship between Veronica and Sheila
and should have been admissible in order to show bias in favor of Sheila. Meeks argues the close
relationship would have created a motive for Veronica to lie on behalf of Sheila. We note that the
legitimate exploration of matters indicating the friendship or leaning of witnesses is permitted. 
Hinojosa v. State, 788 S.W.2d 594, 600 (Tex. App.—Corpus Christi 1990, pet. ref'd). The trial court
did admit some evidence of the relationship between Veronica and Sheila. Evidence that Sheila was
Veronica's aunt was admitted. Veronica also testified she did not want to get Sheila into any trouble. 
However, the proposition that the acts of prostitution and drug dealing establish a close enough
relationship to indicate bias on behalf of Veronica or Sheila seems precarious at best. We believe
that whether these specific acts are relevant to the bias of either witness is within the zone of
reasonable disagreement. Therefore, the trial court did not abuse its discretion in excluding the
testimony.



Was Veronica an Accomplice?
            In her second point of error, Meeks argues the trial court erred in failing to charge the jury
that the testimony of Veronica required corroboration if the jury found that Veronica was an
accomplice. In her third point of error, Meeks contends the trial court erred in failing to charge the
jury that the testimony of Veronica required corroboration. Meeks contends the evidence established
that Veronica was an accomplice, which required an instruction on corroboration. See Tex. Code
Crim. Proc. Ann art. 38.14 (Vernon 1979).
            An accomplice is one who participates in an offense before, during, or after its commission,
to the extent that he or she can be charged with the offense or with a lesser-included offense. Herron
v. State, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002). "A person is an accomplice if there is
sufficient evidence connecting him to the criminal offense as a blameworthy participant." Green v.
State, 72 S.W.3d 420, 423 (Tex. App.—Texarkana 2002, pet. ref'd); see Blake v. State, 971 S.W.2d
451, 455 (Tex. Crim. App. 1998). The witness must perform an affirmative act and be subject to
prosecution for the offense in order to be considered an accomplice. Kutzner v. State, 994 S.W.2d
180, 188 (Tex. Crim. App. 1999); Kunkle v. State, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). 
However, mere presence at the scene does not render a person an accomplice. Solomon v. State, 49
S.W.3d 356, 361 (Tex. Crim. App. 2001); Kunkle, 771 S.W.2d at 439. Even assisting in the moving
of a dead body does not render a defendant an accomplice where the defendant played no role in the
murder. Paredias v. State, No. 74,293, 2004 Tex. Crim. App. LEXIS 1 (Tex. Crim. App. Jan. 14,
2004); Smith v. State, 721 S.W.2d 844, 851 (Tex. Crim. App. 1986); see Medina v. State, 7 S.W.3d
633, 641 (Tex. Crim. App. 1999); see also Long v. State, 10 S.W.3d 389, 394 (Tex.
App.—Texarkana 2000, pet. ref'd).
            Meeks contends Veronica was an accomplice as a matter of law. A prosecution witness who
is indicted for the same offense as the defendant or a lesser-included offense arising out of the same
criminal episode is an accomplice as a matter of law. Herron, 86 S.W.3d at 631; Ex parte Zepeda,
819 S.W.2d 874, 876 (Tex. Crim. App. 1991). An accomplice as a matter of law also arises out of
evidence that leaves no doubt that the witness is an accomplice. Blake, 971 S.W.2d at 455; Gamez
v. State, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987); Brown v. State, 640 S.W.2d 275, 279 (Tex.
Crim. App. [Panel Op.] 1982). Since Veronica had not been indicted for any offense out of the
criminal episode and the evidence does not conclusively establish she was an accomplice, Veronica
was not an accomplice as a matter of law.
            Meeks alleges, in her second point of error, that the evidence created a fact issue as to
whether Veronica was an accomplice. If the evidence creates a fact issue, the witness may be an
accomplice as a matter of fact and the issue should be submitted to the jury. Drummond v. State, 624
S.W.2d 690, 692 (Tex. App.—Beaumont 1981), pet. ref'd, 628 S.W.2d 781 (Tex. Crim. App. 1982). 
Meeks argues Veronica is an accomplice because the juvenile court could have waived jurisdiction
and prosecuted her in criminal court. She also argues Veronica was an accomplice because she
solicited funds from the deceased before the stabbing. However, neither the murder or the robbery
had been committed nor even discussed at that point. Meeks also argues Veronica was an
accomplice because, just before Blackmon's body was being moved, Veronica called Meeks back
outside at Sheila's request. Meeks contends these actions create a fact issue, which should have been
presented to the jury as to whether Veronica was an accomplice.
            The evidence did not raise a fact issue as to whether Veronica was an accomplice because
Veronica lacked the required culpable mental state. Under the law of parties, a person is a party to
an offense if "acting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Pen.
Code Ann. § 7.02(a)(2) (Vernon 2003). This requires a culpable mental state of "conscious
objective or desire to engage in the conduct or cause the result." Tex. Pen. Code Ann. § 6.03(a)
(Vernon 2003). When the commission of the murder was committed by another person during a
robbery, the defendant must have intended to aid in capital murder, not just robbery, in order to be
criminally liable for capital murder. Webb v. State, 760 S.W.2d 263, 268 (Tex. Crim. App. 1988);
Duke v. State, 950 S.W.2d 424, 427 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). Even to be
charged with a lesser-included offense, such as robbery, Veronica must have had the conscious desire
to aid or attempt to aid in that offense. It must be shown that the accused harbored the specific intent
to promote or assist in the commission of the offense. Hanson v. State, 55 S.W.3d 681, 689 (Tex.
App.—Austin 2001, pet. ref'd). Therefore, in order to be an accomplice, Veronica must have had
the conscious desire to aid in the murder of Blackmon or the lesser-included offense of robbery. 
There is no direct evidence Veronica had this required mens rea. Further, we do not believe that
either the solicitation of money before the murder or robbery had even been discussed, or that asking
Meeks to return outside at the request of Sheila indicates Veronica intended to aid in the commission
of the murder or any lesser-included offense. As such, Veronica was not an accomplice as a matter
of law or as a matter of fact, and the trial court did not err in failing to give an accomplice witness
instruction.
Sufficiency of the Evidence
            Meeks contends in her fourth and fifth points of error the evidence is legally and factually
insufficient to support the verdict that the murder was committed in the course of a robbery. Meeks
contends that, because both Sheila and Veronica were accomplices, the corroboration is not
sufficient to connect her to the killing of Blackmon.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            In contrast to legal sufficiency, a factual sufficiency review dictates that the evidence be
viewed in a neutral light, favoring neither party. Johnson, 23 S.W.3d at 7; see Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996). In determining the factual sufficiency of the evidence to
establish the elements of the offense, we view all the evidence in a neutral light and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong,
or so weak as to be clearly wrong or manifestly unjust. Johnson, 23 S.W.3d at 7; Clewis, 922
S.W.2d at 129. "However, a factual sufficiency review must be appropriately deferential so as to
avoid the appellate court's substituting its own judgment for that of the fact finder." Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996); see Clewis, 922 S.W.2d at 133. "The court's
evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and
credibility of witness testimony." Jones, 944 S.W.2d at 648.
            Meeks argues that there is insufficient evidence connecting her to the crime. Article 38.14
provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated
by other evidence tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim.
Proc. Ann. art. 38.14. The State argues that Article 38.14 should have been pled as a separate point
of error. The Texas Court of Criminal Appeals has held that corroboration of the accomplice witness
testimony is a statutory requirement imposed by the Legislature and declined to "impose legal and
factual sufficiency standards upon a review of accomplice witness testimony under Article 38.14." 
Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The State argues Meeks should have
separately argued this point of error from her sufficiency points of error and has waived the argument
by failing to do so. However, there was sufficient corroboration of the accomplice witness
testimony.
            The testimony of Veronica, who was not an accomplice, the testimony of Lopez, and other
physical evidence corroborated the accomplice testimony of Sheila. The test for determining the
sufficiency of the corroboration is to eliminate the accomplice testimony from consideration and then
determine if there is any other incriminating evidence which "tends to connect" the defendant with
the crime. Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Reed v. State, 744
S.W.2d 112, 126 (Tex. Crim. App. 1988). The nonaccomplice evidence does not need to prove all
the elements of the alleged offense. Hernandez, 939 S.W.2d at 176; Underwood v. State, 967
S.W.2d 925, 928 (Tex. App.—Beaumont 1998, pet. ref'd). Lopez testified he gave Sheila and Meeks
a ride to the bar. Veronica testified Meeks sent her outside at the apartment to ask Blackmon for
money. When Blackmon refused to provide more money for drugs, Veronica testified Meeks
became angry and started talking about killing Blackmon. Although she remained at the door of the
apartment, Veronica observed Meeks appear to stab Blackmon. Last, DNA found on a boot in the
apartment matched Blackmon's DNA with a 1 in 829 billion probability. The boot was too small to
have belonged to Veronica or Sheila. The blood-soaked pillowcase found beside Blackmon matched
a pillowcase found in the apartment where Meeks had been staying. A pink birth announcement that
Blackmon kept in his wallet was found in the apartment as well. The Texas Court of Criminal
Appeals has held that DNA evidence on clothing of the accused may tend to connect the accused to
the murder. See Trevino v. State, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999); Gosch v. State, 829
S.W.2d 775, 781 (Tex. Crim. App. 1991). There is clearly sufficient corroborating evidence of
Sheila's testimony which tends to connect Meeks to the offense.
            Meeks argues that no rational trier of fact could have found the essential elements of the
crime. Additionally, Meeks contends the proof of guilt is "so obviously weak as to undermine
confidence in the jury's determination." Meeks argues that no rational person could have concluded
she committed the murder in the course of a robbery. 
            The State was required to prove Meeks caused the death of Blackmon during the course of
a robbery. Capital murder requires the State to prove that Meeks intended to rob Blackmon either
before or during the murder. See Cooper v. State, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002). The
intent can be inferred from circumstantial evidence. Wolfe v. State, 917 S.W.2d 270, 275 (Tex.
Crim. App. 1996). In Conner v. State, the Texas Court of Criminal Appeals held that evidence the
defendant asked the victim for money before murdering the victim was legally sufficient to conclude
the murder was committed during the course of a robbery. 67 S.W.3d 192, 197 (Tex. Crim. App.
2001); see Zapata v. State, 15 S.W.3d 661, 664 (Tex. App.—Beaumont 2000, no pet.). The Texas
Court of Criminal Appeals has also held that intent can be inferred from theft occurring immediately
after a murder. McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989); see Cooper, 67
S.W.2d at 224. 
            There is sufficient evidence Meeks caused the death of Blackmon during the course of a
robbery. Veronica and Sheila both testified Meeks convinced them to solicit money from Blackmon
before the murder. Veronica testified Meeks then said "we should just off him." According to
Veronica, Sheila tried to tell her to "just stop," but Meeks refused to calm down. Veronica testified
Meeks then retrieved a knife from the kitchen and went outside. Although she remained at the door
of the apartment, Veronica observed Meeks appear to stab Blackmon. When Blackmon refused to
provide more money for drugs, Veronica testified Meeks became angry and said she knew he had
more money. Sheila testified Meeks took money from Blackmon's wallet while they were moving
the body. Based on this evidence, we believe a rational person could have concluded Meeks
committed murder while in the course of committing or attempting to commit robbery. Further, the
evidence is not so weak as to undermine confidence in the jury, and the verdict is not against the
overwhelming weight of the evidence.
Lesser-Included Offense
            In her sixth point of error, Meeks claims the trial court erred in denying her requested
submission of an instruction on the lesser-included offense of murder. The decision of whether to
submit an instruction of a lesser-included offense requires a two-part analysis. Cf. Royster v. State,
622 S.W.2d 442 (Tex. Crim. App. [Panel Op.] 1981), with Rousseau v. State, 855 S.W.2d 666, 673
(Tex. Crim. App. 1993). The two-part analysis involves:
[F]irst, the lesser included offense must be included within the proof necessary to
establish the offense charged, and, second, some evidence must exist in the record
that would permit a jury rationally to find that if the defendant is guilty, he is guilty
only of the lesser offense.
Rousseau, 855 S.W.2d at 673. An offense is a lesser-included offense if: "it is established by proof
of the same or less than all the facts required to establish the commission of the offense charged." 
Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1979). In this case, murder is a lesser-included
offense of capital murder, because it is established by the same facts as capital murder. 
            The second part of the test requires us to determine whether there is "some evidence" from
which a rational jury could conclude the defendant is guilty only of the lesser-included offense, not
the greater offense. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); see Rousseau, 855
S.W.2d at 673. Meeks argues the jury should have been instructed on the lesser-included offense
of murder because the jury could have reasonably concluded based on the evidence that the killing
of the deceased was not committed in the course of committing robbery. The State did not present
any evidence Meeks personally asked Blackmon for money immediately before the attack. Sheila
testified Meeks started stabbing Blackmon as soon as the door of the truck was opened. It was not
until the body was being moved to another apartment complex that Meeks took money from
Blackmon.
            Meeks argues the jury could have concluded that the robbery was an afterthought and that
the murder was not committed in the course of a robbery. The defendant's intent to rob must be
formed before or at the time of the murder to qualify as capital murder. Alvarado v. State, 912
S.W.2d 199, 207 (Tex. Crim. App. 1995). If the defendant committed the theft as an afterthought
and unrelated to the murder, he or she did not commit capital murder. Id. at 207; Moody v. State,
827 S.W.2d 875, 892 (Tex. Crim. App. 1992). Meeks argues that, because a rational person could
conclude the murder did not occur in the course of a robbery, she was entitled to an instruction on
the lesser-included offense.
            Meeks fails to meet the second part of the Royster test because no evidence was presented
that she was guilty of only murder. See Rushing v. State, 50 S.W.3d 715, 732 (Tex. App.—Waco 
2001), aff'd, 85 S.W.3d 283 (Tex. Crim. App. 2002). Similar to the circumstances examined in
Rushing, no evidence was presented Meeks murdered Blackmon for a reason other than money. "It
is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather,
there must be some evidence directly germane to a lesser-included offense for the factfinder to
consider before an instruction on a lesser-included offense is warranted." Cantu v. State, 939 S.W.2d
627, 646 (Tex. Crim. App. 1997); see Macias v. State, 959 S.W.2d 332, 336 (Tex. App.—Houston
[14th Dist.] 1997, pet. ref'd). The evidence indicates Meeks sought money from the victim. Ample
evidence was presented that she formed an intent to take money from the victim before the murder,
and did rob him. No evidence raises only the lesser offense of murder, and the trial court did not
abuse its discretion in denying the instruction on the lesser offense of murder.
            For the reasons stated, we affirm the judgment of the trial court.
 

 
                                                                        Jack Carter
                                                                        Justice

Date Submitted:          January 26, 2004
Date Decided:             February 6, 2004

Publish



-orphan;page-break-after:avoid'>Date
Decided: June 25, 2010