Jerry Mack **CLEMMER**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–82–057–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 2, 1983.

William L. Smith, Jr., Denton, for appellant.

Jerry Cobb, Dist. Atty., Denton, for appellee.

Before FENDER, C.J., and HUGHES and BURDOCK, JJ.

## OPINION

FENDER, Chief Justice.

Appellant, Jerry Mack Clemmer, was convicted of involuntary manslaughter as the result of an automobile accident. The jury assessed punishment at two years.

We reverse and remand.

Officer Margaret Yarbrough was dispatched to the scene of an automobile accident in the City of Denton at approximately 10:00 p.m. on November 17, 1981. At the scene, she discovered that there had been a head-on collision between the vehicle driven by Clemmer and another vehicle driven by a sole female occupant. Officer Yarbrough conducted an on-scene investigation then drove to Flow Memorial Hospital, where the female occupant of the other car had been taken by ambulance. Before leaving the scene, however, she instructed another police officer, Robert Stalder, to proceed to Westgate Hospital, where Clemmer had been taken, and to hold Clemmer in custody.

From Flow Memorial Hospital, Officer Yarbrough telephoned Officer Stalder at Westgate and informed him that the female occupant of the other car had died. Officer Stalder formally placed Clemmer under arrest and advised him of his rights in the emergency room at Westgate.

Officer Yarbrough arrived at Westgate about ten minutes after Clemmer had been arrested and had a conversation with him about which she testified outside the presence of the jury as follows:

Q Now, what's the first thing that you did after you went into the examining room where the Defendant and his father were?

A I asked—told the Defendant I would like to talk to him about the accident.

Q And what, if anything, did he say?

A He wasn't really saying anything, he was grunting at that time, he was making just some noises. And I told him that the girl that was in the other car had died.

Q How long a period of time was it from the time you went into the examining room before you made the statement to him that the person in the other car had died?

A About a minute, minute and a half.

Q Where was Officer Stalder whenever you arrived, was he in the room, or was he outside the room?

A He was outside.

Q Was the Defendant handcuffed?

A No, he was not.

Q Okay. What, if anything, did he say to you in response to the fact that you told him that the girl had died?

A His exact words?

Q Yes, ma'am.

A He said, "I don't give a fuck if anybody is dead, I am hurting."

Appellant's counsel objected outside the presence of the jury to admission of the statement made by Clemmer to Officer Yarbrough on grounds that admission would violate V.A.C.C.P. art. 38.22, and specifically mentioning *custodial interrogation.* The objection was overruled and Officer Yarbrough was allowed to testify as to the statement in the presence of the jury (over similar objection).

We accept, arguendo, that Clemmer's statement was voluntary.

Article 38.22 prohibits the introduction of voluntary oral statements made as a result of custodial interrogation unless any one of certain exceptions is applicable. We can

eliminate the complicated requirements of electronic recordation as no recording was made. We can eliminate the exception favoring statements that lead to true facts tending to show guilt because Clemmer's statement did not lead the way to further evidence.

■ We next look to § 5 of art. 38.22 to see if an exemption thereunder exists. A cursory examination of § 5 narrows the search to either "a statement that is *res gestae* of the arrest or of the offense, . . ." or "a statement that does not stem from custodial interrogation . . ."

Since Officer Yarbrough was dispatched to the accident scene at 10:00 p.m. we can safely assume that the time of the commission of the offense was some reasonable number of minutes prior thereto. Officer Yarbrough called Officer Stalder at 11:04 p.m. to report the death of the victim and order Clemmer's arrest. At 11:20 p.m. Officer Stalder formally arrested Clemmer and advised Clemmer of his constitutional rights. At 11:32 p.m. Officer Yarbrough arrived at the hospital where Clemmer had been taken and some few minutes thereafter the conversation took place.

Absent some showing of continuing causal connection, an utterance made some two hours after and at a location far removed from the accident in question can hardly be said to be *res gestae* of the offense. And even if the time that Officer Stalder had Clemmer under observation prior to the formal arrest is disregarded, any statement made to a newly arrived police officer some fifteen or twenty minutes after formal arrest can hardly be considered *res gestae* of the arrest, again absent some showing of continuing causal connection.

■ There remains the question of whether or not the utterance was the result of custodial interrogation.

When Officer Yarbrough entered the room with Clemmer she announced her desire to discuss the situation with Clemmer without warning him further of his right to remain silent. She then informed Clemmer of the death of the victim and Clemmer responded as outlined. Since this conversation cannot be characterized as idle chatter,

we must evaluate it as to the word "interrogation."

In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), Mr. Justice Stewart stated:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. [Footnotes omitted.]

In the instant cause, the statement by Clemmer was an obvious response to the statement of Officer Yarbrough and can in no way be construed to be a spontaneous outcry or a declaration stemming from original thought on the part of Clemmer. The fact that Officer Yarbrough's statement was not punctuated by a question mark (inferred) does not change this conclusion.

Clemmer's oral statement should not have been admitted into evidence. In view of the inflammatory nature of the utterance we cannot say that this did not influence the jury at either stage of the trial.

The cause is reversed and remanded to the trial court.