704 S.W.2d 586 (1986)
Owen E. WORTHAM, Appellant,
v.
The STATE of Texas, Appellee.
No. 3-84-312-CR.
Court of Appeals of Texas, Austin.
February 12, 1986.
*587 Christine Byrd Webb, Burnet, for appellant.
Sam Oatman, Dist. Atty., and Cheryll Mabray, Asst. Dist. Atty., Llano, for appellee.
Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.
PER CURIAM.
A jury found appellant guilty of murder and assessed punishment at imprisonment for twelve years. Tex.Pen.Code Ann. § 19.02 (1974). Because the trial court erroneously admitted in evidence an unrecorded oral statement by appellant, in violation of Tex.Code Cr.P.Ann. art. 38.22, § 3 (Supp.1986), we must reverse the judgment of conviction.
The deceased, Daniel Picha, was appellant's son-in-law. The relationship between the two men was not good, and on March 10, 1983, an argument between the two resulted in Picha threatening appellant with a knife. Three months later, on June 10, appellant shot and killed Picha at the service station operated by the deceased in Twin Sisters. The shooting took place at approximately 9:45 p.m., and appellant was arrested at his home at 11:15 that same night. Appellant was immediately advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Shortly thereafter, appellant was placed in a police car and driven to the Blanco County Jail in Johnson City.
Blanco County deputy sheriff Berry Lyn Parker was one of the officers who accompanied appellant on the trip to the jail. Parker testified at the hearing on appellant's motion to suppress that there was a "conversation" between appellant, Parker, and deputy sheriff Joel Green "almost the entire time all the way to Johnson City." Parker further testified, in answer to questions by defense counsel:
Q: Do you know who started these conversations?
A: No sir, I don't recall.
Q: Okay. You don't recall who spoke first?
A: No, sir. Mr. Wortham was conversing the entire time, sometimes completely unprovoked.
Q: But sometimes in response to questions?
A: Yes, sir.
*588 Q: Okay. Were both you and Officer Green asking him questions concerning the shooting?
A: As I said, we were conversing but some of my conversation with Mr. Wortham as well as some of Deputy Green's had nothing to do with the shooting.
Q: Okay.
A: It was small talk.
Q: Did Mr. Wortham make any statement at that time that you recall concerning the shooting?
A: Yes, sir.
Q: And what statement did he make, please, sir?
A: Mr. Wortham was referring to his son-in-law. He didn't call him by name as I can recall, but he was referring to his son-in-law.
And he said something to the effect that he had given him three months to apologize.
And the thing that stuck in my mind was that he said, "When a man won't apologize, what else can you do."
Q: You recall, sir, in response to what question this answer was given?
A: I believe that was not necessarily in response. That was just aseemed like almost an afterthought on Mr. Wortham's part.
Q: You don't recall Officer Green asking why he did it?
A: He might have asked that sometime before.
Q: All right. Did you ask him why?
A: No, sir, I didn't ask him why.
Q: But Officer Green had asked him, "Why did you do this," or something to that effect?
A: I think earlier he had been talking about the offense and he asked him if he wanted to go ahead and talk to us.
He said, "Do you want toMr. Wortham, do you care to talk to us about this now?" And from there I think that's how the conversation got started.
Q: And then he asked him why?
A: At one part, yes, I believe he did.
Appellant moved to suppress his oral statement to Green pursuant to art. 38.22, § 3, supra, which provides that oral statements that result from custodial interrogation must be recorded to be admissible. This motion was overruled, and Green was permitted to testify at trial concerning appellant's oral statement as part of the State's case in chief. Specifically, Green testified that appellant "stated that he had gone into the Texaco station carrying a pistol in the right front pants pocket and that he had given the victim three months to apologize for an assault that occurred in March and that he would not apologize, so he shot him."
The State argues that appellant's unrecorded oral statement was properly admitted pursuant to Tex.Code Cr.P.Ann. art. 38.22, § 5 (1979), which provides:
Nothing in this article precludes the admission of a statement made by the accused... that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness....
We will discuss each of these theories of admissibility in turn.
Three requirements must be met before a statement may be admitted as res gestae: (1) there must have been an exciting, emotionally stimulating or physically painful event; (2) the admission or assertion must have been made so soon after the occurrence that the declarant is still in the emotional grip of the shocking event; and (3) the assertion must relate to the event. Graham v. State, 486 S.W.2d 92 (Tex.Cr.App.1972). Under the express terms of § 5, the stimulating event may be the arrest or the offense. Gordon v. State, 608 S.W.2d 638 (Tex.Cr.App.1980). While it may be assumed that the shooting of his son-in-law was an exciting, emotionally stimulating event, the record is devoid of any indication that appellant was in the *589 emotional grip of the shooting, or of his arrest, at the time he made his oral statement to Green. To the contrary, the testimony adduced at the suppression hearing and at trial indicates that appellant was calm and entirely cooperative from the moment the police arrived to arrest him. That the statement was made a relatively short time following appellant's arrest is not alone sufficient to render the statement res gestae thereof. Smith v. State, 507 S.W.2d 779 (Tex.Cr.App.1974). We hold the oral statement was not admissible under the res gestae exception of § 5.
Under the terms of §§ 3 and 5 of art. 38.22, an oral statement, though unrecorded, is admissible if it is not the product of custodial interrogation. Stevens v. State, 671 S.W.2d 517 (Tex.Cr.App.1984); Chambliss v. State, 647 S.W.2d 257 (Tex.Cr.App.1983). Because appellant was clearly in custody when he made the statement to Green, the question presented is whether the statement resulted from interrogation.
In giving meaning to the term "custodial interrogation" as it appears in art. 38.22, §§ 3 and 5, the Court of Criminal Appeals has relied on the teaching of Miranda v. Arizona, supra, and its progeny. McCrory v. State, 643 S.W.2d 725 (Tex.Cr.App.1982). In Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Court stated:
We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.
446 U.S. at 300, 301, 100 S.Ct. at 1689 (footnotes omitted). Although Parker referred to appellant's statement as an "afterthought" expressed during a "conversation" between appellant, Green, and himself, he also acknowledged that both he and Green were questioning appellant about the shooting during the drive to Johnson City. Specifically, Parker testified that Green asked appellant "why he did it" and "if he wanted to go ahead and talk to us" about the shooting. We conclude that appellant's statement to Green was the product of interrogation or its functional equivalent.
Because the record reflects that appellant's unrecorded oral statement to Green was neither res gestae of the offense or arrest nor an otherwise voluntary, spontaneous utterance, but instead the product of custodial interrogation, the trial court erred in permitting its introduction as direct evidence of appellant's guilt. The remaining question is whether appellant's subsequent testimony cured the error by rendering the statement admissible as bearing on his credibility as a witness. Before discussing this question, we will briefly summarize appellant's testimony.
Appellant testified that his son-in-law's business was in financial difficulty, but that Picha resented appellant's efforts to assist him in the operation of the service station. Appellant further testified that Picha's March 10 assault on appellant was entirely unprovoked, and that Picha had thereafter refused to talk with appellant. Appellant stated that he went to the service station on June 10 "to make amends and have peace in the family," that he took a pistol with him only because he feared another attack by Picha, and that he shot the deceased only after Picha "started to knock me in the head with the metal end of the air hose." Appellant denied telling Green "something about three months," an obvious reference to Green's testimony concerning the oral statement. According to appellant, what he told Green was "how important it was that I talk to Dan. We needed to get our differences settled."
The erroneous receipt of evidence may be rendered harmless based on the *590 subsequent actions of the defendant at trial. Jones v. State, 587 S.W.2d 115, 119, 120 (Tex.Cr.App.1979) (opinion on rehearing). This concept, generally referred to as the doctrine of curative admissibility, is most commonly invoked when the accused gives direct testimony establishing the same facts he objected to previously. Cameron v. State, 530 S.W.2d 841 (Tex.Cr.App.1975); Palmer v. State, 475 S.W.2d 797 (Tex.Cr.App.1972). It is also applied when the defendant's direct testimony raises an issue to which the evidence previously objected to is relevant and admissible. Thus, the erroneous introduction of an extraneous offense has been held harmless where the defendant placed his identity in issue through his later direct testimony. Jones v. State, supra; Vessels v. State, 467 S.W.2d 259 (Tex.Cr.App.1971). In the present cause, the State argues that if appellant's oral statement to Green was erroneously admitted as direct evidence, the error was harmless because the statement was admissible under art. 38.22, § 5 to impeach appellant's subsequent direct testimony. See Garrett v. State, 682 S.W.2d 301 (Tex.Cr.App.1984).
A corollary to the rule of curative admissibility is that the harmful effect of improperly admitted evidence is not cured if the accused seeks to meet, destroy, or explain it by the introduction of rebutting evidence. Alvarez v. State, 511 S.W.2d 493, 495, 498 (Tex.Cr.App.1973) (opinions on rehearing); Nicholas v. State, 502 S.W.2d 169, 173 (Tex.Cr.App.1973) (opinion on rehearing). This corollary has been expanded in recent decisions to encompass any testimony by the defendant offered to overcome the impact of the erroneously introduced evidence. Sweeten v. State, 693 S.W.2d 454 (Tex.Cr.App.1985); Thomas v. State, 572 S.W.2d 507, 512 (Tex.Cr.App.1978) (opinion on rehearing). Under Sweeten and Thomas, the State may not rely on the doctrine of curative admissibility unless it can show that the defendant's direct testimony was not impelled by the evidence erroneously admitted over his objection.
In the instant cause, appellant's testimony clearly falls within the classic corollary to the doctrine of curative admissibility. By his testimony, appellant sought to meet and destroy the harmful effect of the oral statement erroneously admitted over appellant's objection. Moreover, the State has failed to demonstrate that the error in admitting appellant's oral statement did not impel appellant to testify. We hold that the erroneous admission of the oral statement was not cured by appellant's subsequent direct testimony.
Appellant's unrecorded oral statement was not admissible under any of the relevant provisions of art. 38.22, § 5. Because the trial court erroneously introduced the statement over appellant's objection, and because, under the circumstances of this case, the error cannot be said to be harmless beyond a reasonable doubt, the judgment of conviction must be reversed.
Because this issue may arise on retrial, we will also address appellant's second ground of error, by which he complains that his statement to Green was inadmissible as the fruit of an unlawful arrest. In the complaint pursuant to which the arrest warrant was issued, the affiant states, in pertinent part:
I have good reason to believe and do believe based upon the following information statements of witnesses at the scene to include Jack Warren Friend, Myron Raleigh Friend, Milton Lee Stewart, Jr., and Milton Scharnhorst that Owen E. Wortham did shoot and kill Daniel Dennis Picha....
Contrary to appellant's contention, this recital gave the magistrate a substantial basis for concluding that probable cause existed for appellant's arrest. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Hennessy v. State, 660 S.W.2d 87 (Tex.Cr.App.1983); Avery v. State, 545 S.W.2d 803 (Tex.Cr.App.1977).
The judgment of conviction is reversed and the cause remanded for a new trial.
CARROLL, J., not participating.