NO. 07-04-0479-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 29, 2006


 ______________________________



GREGORY BANNISTER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 154TH DISTRICT COURT OF LAMB COUNTY;



NO. 3900; HONORABLE FELIX KLEIN, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

OPINION


 The primary issue presented in this appeal is whether the procedural protections set
out in Miranda v. Arizona and Article 38.22 of the Texas Code of Criminal Procedure are
applicable to appellant's statement to a jailer concerning the charges against him. The
second issue concerns admission of evidence of cocaine use and withdrawal. Rejecting
appellant's arguments on both issues, we affirm.


Factual and Procedural Background

 On a Saturday morning in May 2002 appellant Gregory Bannister was driving with
a friend from Lubbock to his home in Clovis, New Mexico. Near the city of Amherst his
vehicle left the roadway, striking and killing a bicyclist on the shoulder. Appellant was
present when deputies and DPS troopers arrived and he consented to collection of a blood
sample. Because there was no indication he was intoxicated, appellant was not arrested. 
The sequence of events leading to his subsequent arrest is not clear from this record. It
does show that testing of appellant's blood indicated the use of cocaine and he was
charged with intoxication manslaughter and aggravated assault under two different cause
numbers. This record concerns appellant's trial and conviction for aggravated assault and
punishment, enhanced by prior convictions, of 30 years confinement. (1) 

 During trial the State sought to introduce testimony from Lamb County deputy sheriff
Shaun Wilson that appellant had made a statement indicating he had used cocaine within
a day before the collision. After voir dire of Wilson the defense objected on the basis the
statement was the result of custodial interrogation without "proper warnings," in violation
of his right to counsel, and the State had failed to give timely notice of its intent to call
Wilson. The trial court overruled the objections. Wilson testified that while appellant was
confined in the Lamb County jail in November 2003 he took appellant and another inmate
to a clinic for medical treatment. According to Wilson, in the clinic's waiting room, while
appellant was "talking in general to the other inmate and maybe a nurse . . . . I happened
to ask him what he was incarcerated for." Appellant replied "he was being charged with
Intoxicated Manslaughter." Wilson asked if the events occurred near the town of Earth. 
Appellant said it "happened on [highway] 84 up by Amherst." After further defense
objections the court recessed for the evening to give the defense an opportunity to
investigate the testimony. 

 The State recalled Wilson during rebuttal. (2) Wilson was asked again about
appellant's answer to his first question and replied: "He responded that he was in jail for
Intoxicated Manslaughter." Wilson testified appellant then "stated that he didn't understand
why he was being charged with Intoxicated Manslaughter if he had used cocaine the day
before." Wilson testified he did not document the statement at the time or take any steps
then to make an investigator or prosecutor working on the case aware of it. The prosecutor
only learned of the statement during a lunchtime conversation the Friday before trial. The
prosecutor asked Wilson to reduce his recollection of the event to writing and provided a
copy to defense counsel the same afternoon. 

 The State's rebuttal evidence also included testimony from Brian Cantrell, the other
inmate at the clinic. Cantrell's testimony supported Wilson's version of events. He recalled
that appellant asked Wilson, "How can they charge me with Intoxicated Manslaughter when
I wasn't drunk, when I was on cocaine at the time." According to Cantrell that statement
was not in response to questioning by Wilson. (3) 

Custodial Interrogation

 Appellant's first four points advance different theories why admission of the
evidence of his November 2003 statement was error. Point one rests on Article 38.22 of
the Texas Code of Criminal Procedure. Point two asserts violation of his Sixth Amendment
right to counsel. In point three he asserts violation of his Fifth Amendment right against
self-incrimination and point four complains of the State's failure to timely disclose the
statement. We review challenges to a trial court's evidentiary rulings for abuse of
discretion. McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). That standard
requires us to give almost total deference to a trial court's determination of historical facts
that find support in the record. State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000)
(suppression hearing); Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). 

 In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966), the
Supreme Court prohibited the prosecution's use of statements stemming from custodial
interrogation unless it demonstrated the use of procedural safeguards to protect the
accused's right against self incrimination. Id. at 444. Article 38.22 of the Code of Criminal
Procedure imposes additional procedural steps designed to protect the same rights and,
with a limited exception not applicable here, prohibits use of statements made as a result
of custodial interrogation when the enumerated procedures are not followed. Tex. Code
Crim. Proc. Ann. art. 38.22 (Vernon 2005). Section 5 of Article 38.22 reiterates that
statements which do not result from custodial interrogation are not subject to exclusion. 
The parties agree the procedures described in Miranda and set out in article 38.22, section
3 (governing oral statements) were not followed by Wilson. They also agree appellant was
in custody at the time of the statements. Their dispute, and resolution of appellant's first
and third points, turn on whether the statements were the result of interrogation. 

 Appellant relies primarily on the holding in Rhode Island v. Innis, 446 U.S. 291, 100
S.Ct. 1682, 64 L.Ed.2d 297 (1980), and cases following it holding "the term 'interrogation'
under Miranda refers not only to express questioning, but also to any words or actions on
the part of the police (other than those normally attendant to arrest and custody) that the
police should know are reasonably likely to elicit an incriminating response." Id. at 301. It
defined an incriminating response to include any response the prosecution may seek to
introduce at trial. Id. at 301 n.5. The defendant in Innis was arrested for a shooting where
police believed he had discarded the murder weapon near a school. While transporting
Innis to the police station after he had been given the warnings required by Miranda,
officers discussed the importance of finding the gun before it was discovered by
schoolchildren. Id. at 294-95. Innis told the officers to turn back and he would show them
where the gun was. Id. at 295. Innis later argued the statement was the product of
custodial interrogation and inadmissible. The court rejected that contention, holding the
conversation between the officers was neither express questioning of Innis or its "functional
equivalent." Id. at 302. It found the officers' statements "offhand remarks" not reasonably
likely to elicit an incriminating response. Id. at 303.

 The record does not support appellant's conclusion that Wilson should have known
the questions he asked were reasonably likely to elicit an incriminating response. A
response to Wilson's first question would not be incriminating under the broad definition
of that term in Innis. But see Etheridge v. Johnson, 49 F.Supp.2d 963, 981-82 (S.D. Tex.
1999) (arresting officer asked if defendant knew why he was being arrested). That
appellant knew the charge against him was not a fact the State would seek to introduce
at trial. Had Wilson asked what appellant had done, rather than what he was charged with,
the question would likely have elicited an incriminating response. See, e.g., U.S. v. Webb,
755 F.2d 382, 389 (5th Cir. 1985) (booking officer asked "what . . . did you get yourself
into?"). The same is true for Wilson's second question about the location of events leading
to the charge. Both witnesses to the conversation who testified asserted appellant's
statement concerning cocaine use was not in response to any question from Wilson. (4) 

 We do not agree the facts presented here are more similar to cases cited by
appellant where reviewing courts have found police conduct was the functional equivalent
of express questioning. The distinguishing factor is that in those cases the statements
were made to officers who were investigating the offense for which the defendant was in
custody. In Wortham v. State, 704 S.W.2d 586, 589 (Tex.App.-Austin, 1986, no pet.), the
statement at issue occurred during a conversation between sheriff's deputies and the
defendant on the way to jail. The officers admitted the conversation included questions
about the shooting they were investigating, but contended the statement at issue was not
in response to a question but "almost an afterthought." Id. at 588. The officers' questions
about the shooting showed they were investigating the offense and the court held the
statement was the result of custodial interrogation. Id. at 589. 

 The Eastland Court of Appeals followed Wortham in Baxter v. State, 718 S.W.2d
28 (Tex.App.-Eastland 1986, pet. ref'd), holding statements made to officers during their
search of a trailer containing a clandestine drug lab shortly after the defendant's arrest
were the result of interrogation. On evidence the officers asked the defendant questions
concerning the operations at the trailer, the court rejected the officers' claim the statements
were made in "general conversation." Id. at 33. An investigating officer's statements to a
defendant in an emergency room that another person involved in a traffic accident had died
and the officer wanted to talk with the defendant about the accident were found to
constitute interrogation in Clemmer v. State, 645 S.W.2d 918, 919 (Tex.App.-Fort Worth
1983, no pet.). Following Innis, the court found the officer's statements reasonably likely
to elicit an incriminating response and reversed the conviction. Id. at 920. See also
Etheridge, 49 F.Supp.2d at 982 (arresting officer asked defendant if he knew why he was
under arrest); Castleberry v. State, 100 S.W.3d 400, 404 (Tex.App.-San Antonio 2002, no
pet.) (post-arrest question by investigating officer at scene about ownership of weapon was
interrogation, precluding admission of the defendant's response in his prosecution for
weapons offense).

 By contrast, evidence shows Wilson had no involvement in the investigation of the
charges against appellant. (5) The statements to which Wilson testified were made some
eighteen months after the May 2002 death of the bicyclist. 

 In Innis the Court recognized that an officer's intent may have a bearing on whether
he should have known his words or actions were reasonably likely to elicit an incriminating
response. Innis, 446 U.S. at 301 n.7. See also Wilkerson v. State, 173 S.W.3d 521, 528-30 (Tex.Crim.App. 2005) (discussing application of Miranda and art. 38.22 to questions by
state agent not participating in criminal investigation). The jailer in Webb placed himself
into the law enforcement role by admitting he "saw his own role as one of helping in the
FBI's investigation in whatever way he could," and by informing investigators of the
defendant's statement. 755 F.2d at 389. The circumstances of appellant's statements in
the waiting room of the clinic and Wilson's failure to record the statement or report it to
investigators or the prosecutor further indicate he had no intent to act in an investigative
capacity. The record supports a finding appellant's statement was not the result of
interrogation. We overrule appellant's first and third points of error. 

 Appellant's second point asserts admission of the statement violated his Sixth
Amendment right to counsel. Protection of that right prohibits police from eliciting
incriminating statements from a defendant concerning the pending charge after the
defendant's right to counsel attaches, which occurs on commencement of adversarial
proceedings. Fellers v. U.S., 540 U.S. 519, 523, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004); 
Kirby v. Illinois, 406 U.S. 682, 688-90, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Custody of
a defendant is not necessary to a Sixth Amendment violation. Innis, 446 U.S. at 300. 

 Appellant relies on the argument advanced under his first point to establish Wilson's
conduct was designed to elicit incriminating statements in violation of his Sixth Amendment
right to counsel. The State's brief contains no discussion of appellant's Sixth Amendment
claim. We initially note the Sixth Amendment right to counsel is offense-specific. Texas
v. Cobb, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); Romo v. State, 132
S.W.3d 2, 3 (Tex.App.-Amarillo 2003, no pet.). Even if Wilson's conversation with
appellant were reasonably likely to elicit an incriminating statement, it concerned the
charge of intoxication manslaughter. Admission of that evidence in his trial for aggravated
assault, for which he apparently had not yet been indicted, (6) would not be barred under the
Sixth Amendment. Id. Moreover, for the reasons discussed, the record supports a
conclusion that Wilson's questions to appellant were not designed or reasonably likely to
elicit incriminating information. We overrule appellant's third point.

 Appellant's fourth point of error complains of the State's failure to timely disclose his
statement to the defense. He argues evidence of the statement should have been
excluded because it was not disclosed to defense counsel until the second day of trial in
violation of a pretrial order issued under article 39.14 of the Code of Criminal Procedure
(Vernon 2005). The trial court order required disclosure of, inter alia, "all oral confessions,
admissions and statements made by Defendant to the state in connection with this case,
which were not electronically recorded[,] offense reports, police reports [and] reports of
third parties . . . involving the alleged facts of the offense." 

 Article 39.14(a) authorizes a trial court to order the State to produce documents,
written statements of the defendant and tangible objects under the control of the State
which are relevant to the action. Tex. Code Crim. Proc. Ann. art. 39.14(a) (Vernon 2005). 
An order under that article "shall specify the time, place and manner of making the
inspection[.]" Id.; Kinnamon v. State, 791 S.W.2d 84, 92 (Tex.Crim.App. 1990), overruled
on other grounds, Cook v. State, 884 S.W.2d 485 (Tex.Crim.App. 1994). 

 Appellant's motion did not ask the trial court to set a time for production and the
court did not do so. See Kinnamon, 791 S.W.2d at 92 (court does not err in failing to set
date when there is no request). The record shows Wilson's statement concerning the
event was provided to defense counsel the Friday before trial. In the absence of a
deadline set by the court, disclosure on the eve of trial has been found timely. Kirksey v.
State, 132 S.W.3d 49, 54 (Tex.App.-Beaumont 2004, no pet.), citing Murray v. State, 24
S.W.3d 881, 893 (Tex.App.-Waco 2000, no pet.). The facts here are indistinguishable
from those of Murray. There the prosecutor received a witness statement at 5:35 p.m. on
the Friday before trial. Id. at 893. She forwarded the statement to defense counsel thirty
minutes later. The trial started the following Monday and the witness was called on
Wednesday. Id. The Waco Court of Appeals found no violation of the discovery order and
affirmed. Id. Finding that holding dispositive, we overrule appellant's fourth point.

 Appellant's next three points challenge the admission of expert witness testimony
concerning the presence of a cocaine metabolite in his blood and the effect of cocaine
withdrawal. He argues the evidence was admitted in violation of Rules of Evidence 401 (7)
(point five), 702 (point six), and 403 (point seven). The disputed evidence was the
testimony of Department of Public Safety chemist Kathy Erwin, who analyzed the blood
collected from appellant. She found it contained .36 milligrams per liter of benzoylecgonine.
This chemical is produced when the body metabolizes cocaine. Benzoylecgonine has no
effect on the body but indicates cocaine had been present. According to Erwin the
presence of benzoylecgonine does not indicate how or when the cocaine was ingested. (8) 
Erwin went on to testify that cocaine is a potent stimulant which can lead to a "crash phase"
or "crash effect" during withdrawal where the user can experience fatigue and sleepiness
and a general lack of energy. (9) The effect can exist even when the cocaine is no longer
present. 

 Erwin was not asked for an opinion whether appellant had experienced cocaine
crash or withdrawal. Except for her identification of appellant's blood sample and her
recitation of the procedures utilized in the DPS lab and results of her analysis, Erwin's
testimony was not related directly to appellant. 

 The defense presented expert testimony from toxicologist James Booker. His
testimony was consistent with that of Erwin on the source of benzoylecgonine and the
general scientific recognition of a cocaine crash or cocaine withdrawal. He agreed that
effect can last from several hours to several days, but opined an occasional user of small
amounts of cocaine would not suffer a withdrawal effect. When asked what information
was needed to determine the effect of a drug on a person, he replied that for cocaine it
would require information on when it was used, how much was used and the means by
which it was administered, adding that information was not available in this case. 

 Following the plain language of Rule 401, appellant argues by his fifth point Erwin's
testimony did not have any tendency to make a fact of consequence to the determination
of the action more or less probable because it did "not establish that he was under the
influence of cocaine when he struck the decedent." This argument misapprehends the
State's theory at trial and the purpose of Erwin's testimony. It was not the State's theory
that appellant was under the influence of cocaine at the time of the collision, but that he
was fatigued and sleepy because he was suffering withdrawal from cocaine. This theory
was within the indictment allegation that appellant operated a motor vehicle "without
sufficient sleep, as a result of the introduction of cocaine into his body[.]" (10) Erwin's
testimony was relevant because it established scientific acceptance of the effects of
cocaine withdrawal. It also showed appellant had consumed cocaine in the recent past. 
That the testimony did not establish when the cocaine was consumed or conclusively
establish appellant experienced cocaine withdrawal at the time of the collision did not make
it inadmissible. As the Court of Criminal Appeals has explained, the insufficiency of a
particular item of evidence, standing alone, to prove a fact does not make it inadmissible. 
Manning, 114 S.W.3d at 927. We overrule appellant's fifth point.

 In his sixth point appellant challenges admission of Erwin's testimony because the
State failed to establish the reliability of that testimony. When a party offers testimony of
an expert witness, it is the trial court's responsibility to determine if the evidence is
sufficiently reliable to assist the jury. Sexton v. State, 93 S.W.3d 96, 99 (Tex.Crim.App.
2002). Appellant argues the State "failed to shoulder its burden of showing that [E]rwin's
technique applying the cocaine crash theory was valid and that the technique had been
properly applied in this case." As noted, however, Erwin's testimony did not apply the
cocaine crash theory to appellant. Before the jury, she was not asked if appellant had
experienced cocaine crash or withdrawal. (11) 

 The State showed Erwin had bachelor's and master's degrees in chemistry, had
taken additional graduate courses in forensic toxicology and had over 20 years experience
in the field of chemistry, with five of those in the DPS crime laboratory. She also identified
literature reporting studies on the effects of cocaine use. Appellant presents no challenge
to the reliability of Erwin's testimony about her analysis of his blood, that concerning the
metabolite benzoylecgonine, or that describing the effects on the body of cocaine use and
cocaine withdrawal. His challenge is to testimony that Erwin did not give. We overrule
appellant's sixth point. 

 In his final point of error appellant argues that even if the evidence of the presence
of benzoylecgonine was relevant, it should have been excluded because the probative
value was substantially outweighed by the danger of unfair prejudice. See Tex. R. Evid.
403. In reviewing an objection to evidence under Rule 403, a court should consider, but
is not limited to, the following factors: (1) the probative value of the evidence; (2) the
potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to
develop the evidence; and (4) the proponent's need for the evidence. Prible v. State, 175
S.W.3d 724, 733 (Tex.Crim.App. 2005); Manning, 114 S.W.3d at 926. Appellant's
argument reiterates the contentions regarding relevancy urged in support of his fifth point.
His argument challenges the Court of Criminal Appeals' analysis of similar evidence in
Manning, and its conclusion the failure to exclude such evidence under Rule 403 was not
error. We find the analysis and holding in Manning dispositive and overrule appellant's
seventh point. 

 Having overruled appellant's points of error, we affirm the trial court's judgment.


 James T. Campbell

 Justice






Do not publish.


1. Disposition of the manslaughter charge is not shown in this record.
2. A defense expert testified that no conclusion could be drawn about when 
appellant consumed cocaine based on the analysis of his blood. 
3. At the time of appellant's trial Cantrell had discharged his sentence and testified
he was not subject to probation, parole or pending charges. 
4. During defense counsel's voir dire examination of Wilson, he described the context
of appellant's statements in the waiting room, stating, "He wasn't talking to me in general.
He was speaking out loud to, basically, anybody that would listen to him. There was
another inmate in the room at that time and I think the nurses were around as well." 
5. Questioned during his voir dire examination about his reaction to appellant's
statements, Wilson testified, "Whenever he made that statement it - I didn't know what
effect it would have on the case or I didn't know what kind of evidence they had or anything
like that. A lot of times they may talk about their cases out loud." 
6. Appellant's indictment for aggravated assault appearing in the appellate record is
dated in January 2004, after his November 2003 conversation with deputy Wilson. Wilson
and Brian Cantrell testified appellant's statement during that conversation was to the effect
he had been indicted for "intoxicated manslaughter." Nothing in the record makes clear
whether appellant's earlier indictment included the aggravated assault charge.
7. Trial defense counsel's objection to Erwin's testimony referred to Rule 401, which
defines relevant evidence. It is Rule of Evidence 402 that makes evidence which is not
relevant inadmissible. 
8. Appellant's expert testified benzoylecgonine is normally present for two or three
days, but that some reported cases found detectible amounts after two or three weeks in
chronic cocaine users. 
9. She said that among its effects, cocaine "keeps you awake." 
10. Because the use of cocaine was alleged in the indictment, evidence of that use
was not an extraneous offense. Manning v. State, 114 S.W.3d 922, 927 (Tex.Crim.App.
2003).
11. Erwin was not directly asked if appellant had used cocaine. She testified
appellant's blood sample contained the metabolite benzoylecgonine and that
benzoylecgonine is produced in the body only following cocaine use. She agreed with the
prosecutor that, from the presence of benzoylecgonine in a person's body, she could tell
that cocaine "was used."