NO. 07-04-0479-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 29, 2006
_____

GREGORY BANNISTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 154TH DISTRICT COURT OF LAMB COUNTY;

NO. 3900; HONORABLE FELIX KLEIN, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

The primary issue presented in this appeal is whether the procedural protections set out in *Miranda v. Arizona* and Article 38.22 of the Texas Code of Criminal Procedure are applicable to appellant's statement to a jailer concerning the charges against him.  The second issue concerns admission of evidence of cocaine use and withdrawal.  Rejecting appellant's arguments on both issues, we affirm.

Factual and Procedural Background

On a Saturday morning in May 2002 appellant Gregory Bannister was driving with a friend from Lubbock to his home in Clovis, New Mexico. Near the city of Amherst his vehicle left the roadway, striking and killing a bicyclist on the shoulder. Appellant was present when deputies and DPS troopers arrived and he consented to collection of a blood sample. Because there was no indication he was intoxicated, appellant was not arrested. The sequence of events leading to his subsequent arrest is not clear from this record. It does show that testing of appellant's blood indicated the use of cocaine and he was charged with intoxication manslaughter and aggravated assault under two different cause numbers. This record concerns appellant's trial and conviction for aggravated assault and punishment, enhanced by prior convictions, of 30 years confinement.[1]

During trial the State sought to introduce testimony from Lamb County deputy sheriff Shaun Wilson that appellant had made a statement indicating he had used cocaine within a day before the collision. After voir dire of Wilson the defense objected on the basis the statement was the result of custodial interrogation without "proper warnings," in violation of his right to counsel, and the State had failed to give timely notice of its intent to call Wilson. The trial court overruled the objections. Wilson testified that while appellant was confined in the Lamb County jail in November 2003 he took appellant and another inmate to a clinic for medical treatment. According to Wilson, in the clinic's waiting room, while appellant was "talking in general to the other inmate and maybe a nurse . . . . I happened

---

[1] Disposition of the manslaughter charge is not shown in this record.

2

to ask him what he was incarcerated for." Appellant replied "he was being charged with Intoxicated Manslaughter." Wilson asked if the events occurred near the town of Earth. Appellant said it "happened on [highway] 84 up by Amherst." After further defense objections the court recessed for the evening to give the defense an opportunity to investigate the testimony.

The State recalled Wilson during rebuttal.[2] Wilson was asked again about appellant's answer to his first question and replied: "He responded that he was in jail for Intoxicated Manslaughter." Wilson testified appellant then "stated that he didn't understand why he was being charged with Intoxicated Manslaughter if he had used cocaine the day before." Wilson testified he did not document the statement at the time or take any steps then to make an investigator or prosecutor working on the case aware of it. The prosecutor only learned of the statement during a lunchtime conversation the Friday before trial. The prosecutor asked Wilson to reduce his recollection of the event to writing and provided a copy to defense counsel the same afternoon.

The State's rebuttal evidence also included testimony from Brian Cantrell, the other inmate at the clinic. Cantrell's testimony supported Wilson's version of events. He recalled that appellant asked Wilson, "How can they charge me with Intoxicated Manslaughter when

---

[2] A defense expert testified that no conclusion could be drawn about when appellant consumed cocaine based on the analysis of his blood.

I wasn't drunk, when I was on cocaine at the time." According to Cantrell that statement was not in response to questioning by Wilson.[3]

## Custodial Interrogation

Appellant's first four points advance different theories why admission of the evidence of his November 2003 statement was error. Point one rests on Article 38.22 of the Texas Code of Criminal Procedure. Point two asserts violation of his Sixth Amendment right to counsel. In point three he asserts violation of his Fifth Amendment right against self-incrimination and point four complains of the State's failure to timely disclose the statement. We review challenges to a trial court's evidentiary rulings for abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). That standard requires us to give almost total deference to a trial court's determination of historical facts that find support in the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000) (suppression hearing); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966), the Supreme Court prohibited the prosecution's use of statements stemming from custodial interrogation unless it demonstrated the use of procedural safeguards to protect the accused's right against self incrimination. *Id.* at 444. Article 38.22 of the Code of Criminal Procedure imposes additional procedural steps designed to protect the same rights and, with a limited exception not applicable here, prohibits use of statements made as a result

---

[3] At the time of appellant's trial Cantrell had discharged his sentence and testified he was not subject to probation, parole or pending charges.

4

of custodial interrogation when the enumerated procedures are not followed. Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). Section 5 of Article 38.22 reiterates that statements which do not result from custodial interrogation are not subject to exclusion. The parties agree the procedures described in *Miranda* and set out in article 38.22, section 3 (governing oral statements) were not followed by Wilson. They also agree appellant was in custody at the time of the statements. Their dispute, and resolution of appellant's first and third points, turn on whether the statements were the result of interrogation.

Appellant relies primarily on the holding in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and cases following it holding "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* at 301. It defined an incriminating response to include any response the prosecution may seek to introduce at trial. *Id.* at 301 n.5. The defendant in *Innis* was arrested for a shooting where police believed he had discarded the murder weapon near a school. While transporting Innis to the police station after he had been given the warnings required by *Miranda*, officers discussed the importance of finding the gun before it was discovered by schoolchildren. *Id.* at 294-95. Innis told the officers to turn back and he would show them where the gun was. *Id.* at 295. Innis later argued the statement was the product of custodial interrogation and inadmissible. The court rejected that contention, holding the conversation between the officers was neither express questioning of Innis or its "functional

equivalent." *Id.* at 302. It found the officers' statements "offhand remarks" not reasonably likely to elicit an incriminating response. *Id.* at 303.

The record does not support appellant's conclusion that Wilson should have known the questions he asked were reasonably likely to elicit an incriminating response. A response to Wilson's first question would not be incriminating under the broad definition of that term in *Innis*. *But see Etheridge v. Johnson*, 49 F.Supp.2d 963, 981-82 (S.D. Tex. 1999) (arresting officer asked if defendant knew why he was being arrested). That appellant knew the charge against him was not a fact the State would seek to introduce at trial. Had Wilson asked what appellant had done, rather than what he was charged with, the question would likely have elicited an incriminating response. *See, e.g., U.S. v. Webb*, 755 F.2d 382, 389 (5th Cir. 1985) (booking officer asked "what . . . did you get yourself into?"). The same is true for Wilson's second question about the location of events leading to the charge. Both witnesses to the conversation who testified asserted appellant's statement concerning cocaine use was not in response to any question from Wilson.[4]

We do not agree the facts presented here are more similar to cases cited by appellant where reviewing courts have found police conduct was the functional equivalent of express questioning. The distinguishing factor is that in those cases the statements were made to officers who were investigating the offense for which the defendant was in custody. In *Wortham v. State*, 704 S.W.2d 586, 589 (Tex.App.–Austin, 1986, no pet.), the

---

[4] During defense counsel's voir dire examination of Wilson, he described the context of appellant's statements in the waiting room, stating, "He wasn't talking to me in general. He was speaking out loud to, basically, anybody that would listen to him. There was another inmate in the room at that time and I think the nurses were around as well."

statement at issue occurred during a conversation between sheriff's deputies and the defendant on the way to jail. The officers admitted the conversation included questions about the shooting they were investigating, but contended the statement at issue was not in response to a question but "almost an afterthought." *Id.* at 588. The officers' questions about the shooting showed they were investigating the offense and the court held the statement was the result of custodial interrogation. *Id.* at 589.

The Eastland Court of Appeals followed *Wortham* in *Baxter v. State*, 718 S.W.2d 28 (Tex.App.–Eastland 1986, pet. ref'd), holding statements made to officers during their search of a trailer containing a clandestine drug lab shortly after the defendant's arrest were the result of interrogation. On evidence the officers asked the defendant questions concerning the operations at the trailer, the court rejected the officers' claim the statements were made in "general conversation." *Id.* at 33. An investigating officer's statements to a defendant in an emergency room that another person involved in a traffic accident had died and the officer wanted to talk with the defendant about the accident were found to constitute interrogation in *Clemmer v. State*, 645 S.W.2d 918, 919 (Tex.App.–Fort Worth 1983, no pet.). Following *Innis*, the court found the officer's statements reasonably likely to elicit an incriminating response and reversed the conviction. *Id.* at 920. *See also Etheridge*, 49 F.Supp.2d at 982 (arresting officer asked defendant if he knew why he was under arrest); *Castleberry v. State*, 100 S.W.3d 400, 404 (Tex.App.–San Antonio 2002, no pet.) (post-arrest question by investigating officer at scene about ownership of weapon was interrogation, precluding admission of the defendant's response in his prosecution for weapons offense).

7

By contrast, evidence shows Wilson had no involvement in the investigation of the charges against appellant.[5] The statements to which Wilson testified were made some eighteen months after the May 2002 death of the bicyclist.

In *Innis* the Court recognized that an officer's intent may have a bearing on whether he should have known his words or actions were reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 301 n.7. *See also Wilkerson v. State*, 173 S.W.3d 521, 528-30 (Tex.Crim.App. 2005) (discussing application of *Miranda* and art. 38.22 to questions by state agent not participating in criminal investigation). The jailer in *Webb* placed himself into the law enforcement role by admitting he "saw his own role as one of helping in the FBI's investigation in whatever way he could," and by informing investigators of the defendant's statement. 755 F.2d at 389. The circumstances of appellant's statements in the waiting room of the clinic and Wilson's failure to record the statement or report it to investigators or the prosecutor further indicate he had no intent to act in an investigative capacity. The record supports a finding appellant's statement was not the result of interrogation. We overrule appellant's first and third points of error.

Appellant's second point asserts admission of the statement violated his Sixth Amendment right to counsel. Protection of that right prohibits police from eliciting incriminating statements from a defendant concerning the pending charge after the defendant's right to counsel attaches, which occurs on commencement of adversarial

---

[5] Questioned during his voir dire examination about his reaction to appellant's statements, Wilson testified, "Whenever he made that statement it – I didn't know what effect it would have on the case or I didn't know what kind of evidence they had or anything like that. A lot of times they may talk about their cases out loud."

proceedings. *Fellers v. U.S.*, 540 U.S. 519, 523, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004); *Kirby v. Illinois*, 406 U.S. 682, 688-90, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Custody of a defendant is not necessary to a Sixth Amendment violation. *Innis*, 446 U.S. at 300.

Appellant relies on the argument advanced under his first point to establish Wilson's conduct was designed to elicit incriminating statements in violation of his Sixth Amendment right to counsel. The State's brief contains no discussion of appellant's Sixth Amendment claim. We initially note the Sixth Amendment right to counsel is offense-specific. *Texas v. Cobb*, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); *Romo v. State*, 132 S.W.3d 2, 3 (Tex.App.–Amarillo 2003, no pet.). Even if Wilson's conversation with appellant were reasonably likely to elicit an incriminating statement, it concerned the charge of intoxication manslaughter. Admission of that evidence in his trial for aggravated assault, for which he apparently had not yet been indicted,[6] would not be barred under the Sixth Amendment. *Id.* Moreover, for the reasons discussed, the record supports a conclusion that Wilson's questions to appellant were not designed or reasonably likely to elicit incriminating information. We overrule appellant's third point.

Appellant's fourth point of error complains of the State's failure to timely disclose his statement to the defense. He argues evidence of the statement should have been excluded because it was not disclosed to defense counsel until the second day of trial in

---

[6] Appellant's indictment for aggravated assault appearing in the appellate record is dated in January 2004, after his November 2003 conversation with deputy Wilson. Wilson and Brian Cantrell testified appellant's statement during that conversation was to the effect he had been indicted for "intoxicated manslaughter." Nothing in the record makes clear whether appellant's earlier indictment included the aggravated assault charge.

9

violation of a pretrial order issued under article 39.14 of the Code of Criminal Procedure (Vernon 2005). The trial court order required disclosure of, *inter alia*, "all oral confessions, admissions and statements made by Defendant to the state in connection with this case, which were not electronically recorded[,] offense reports, police reports [and] reports of third parties . . . involving the alleged facts of the offense."

Article 39.14(a) authorizes a trial court to order the State to produce documents, written statements of the defendant and tangible objects under the control of the State which are relevant to the action. Tex. Code Crim. Proc. Ann. art. 39.14(a) (Vernon 2005). An order under that article "shall specify the time, place and manner of making the inspection[.]" *Id.*; *Kinnamon v. State*, 791 S.W.2d 84, 92 (Tex.Crim.App. 1990), *overruled on other grounds, Cook v. State*, 884 S.W.2d 485 (Tex.Crim.App. 1994).

Appellant's motion did not ask the trial court to set a time for production and the court did not do so. *See Kinnamon*, 791 S.W.2d at 92 (court does not err in failing to set date when there is no request). The record shows Wilson's statement concerning the event was provided to defense counsel the Friday before trial. In the absence of a deadline set by the court, disclosure on the eve of trial has been found timely. *Kirksey v. State*, 132 S.W.3d 49, 54 (Tex.App.–Beaumont 2004, no pet.), *citing Murray v. State*, 24 S.W.3d 881, 893 (Tex.App.–Waco 2000, no pet.). The facts here are indistinguishable from those of *Murray*. There the prosecutor received a witness statement at 5:35 p.m. on the Friday before trial. *Id.* at 893. She forwarded the statement to defense counsel thirty minutes later. The trial started the following Monday and the witness was called on

10

Wednesday. *Id.* The Waco Court of Appeals found no violation of the discovery order and affirmed. *Id.* Finding that holding dispositive, we overrule appellant's fourth point.

Appellant's next three points challenge the admission of expert witness testimony concerning the presence of a cocaine metabolite in his blood and the effect of cocaine withdrawal. He argues the evidence was admitted in violation of Rules of Evidence 401[7] (point five), 702 (point six), and 403 (point seven). The disputed evidence was the testimony of Department of Public Safety chemist Kathy Erwin, who analyzed the blood collected from appellant. She found it contained .36 milligrams per liter of benzoylecgonine. This chemical is produced when the body metabolizes cocaine. Benzoylecgonine has no effect on the body but indicates cocaine had been present. According to Erwin the presence of benzoylecgonine does not indicate how or when the cocaine was ingested.[8] Erwin went on to testify that cocaine is a potent stimulant which can lead to a "crash phase" or "crash effect" during withdrawal where the user can experience fatigue and sleepiness and a general lack of energy.[9] The effect can exist even when the cocaine is no longer present.

---

[7] Trial defense counsel's objection to Erwin's testimony referred to Rule 401, which defines relevant evidence. It is Rule of Evidence 402 that makes evidence which is not relevant inadmissible.

[8] Appellant's expert testified benzoylecgonine is normally present for two or three days, but that some reported cases found detectible amounts after two or three weeks in chronic cocaine users.

[9] She said that among its effects, cocaine "keeps you awake."

Erwin was not asked for an opinion whether appellant had experienced cocaine crash or withdrawal. Except for her identification of appellant's blood sample and her recitation of the procedures utilized in the DPS lab and results of her analysis, Erwin's testimony was not related directly to appellant.

The defense presented expert testimony from toxicologist James Booker. His testimony was consistent with that of Erwin on the source of benzoylecgonine and the general scientific recognition of a cocaine crash or cocaine withdrawal. He agreed that effect can last from several hours to several days, but opined an occasional user of small amounts of cocaine would not suffer a withdrawal effect. When asked what information was needed to determine the effect of a drug on a person, he replied that for cocaine it would require information on when it was used, how much was used and the means by which it was administered, adding that information was not available in this case.

Following the plain language of Rule 401, appellant argues by his fifth point Erwin's testimony did not have any tendency to make a fact of consequence to the determination of the action more or less probable because it did "not establish that he was under the influence of cocaine when he struck the decedent." This argument misapprehends the State's theory at trial and the purpose of Erwin's testimony. It was not the State's theory that appellant was under the influence of cocaine at the time of the collision, but that he was fatigued and sleepy because he was suffering withdrawal from cocaine. This theory was within the indictment allegation that appellant operated a motor vehicle "without

12

sufficient sleep, as a result of the introduction of cocaine into his body[.]"[10] Erwin's testimony was relevant because it established scientific acceptance of the effects of cocaine withdrawal. It also showed appellant had consumed cocaine in the recent past. That the testimony did not establish when the cocaine was consumed or conclusively establish appellant experienced cocaine withdrawal at the time of the collision did not make it inadmissible. As the Court of Criminal Appeals has explained, the insufficiency of a particular item of evidence, standing alone, to prove a fact does not make it inadmissible. *Manning*, 114 S.W.3d at 927. We overrule appellant's fifth point.

In his sixth point appellant challenges admission of Erwin's testimony because the State failed to establish the reliability of that testimony. When a party offers testimony of an expert witness, it is the trial court's responsibility to determine if the evidence is sufficiently reliable to assist the jury. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex.Crim.App. 2002). Appellant argues the State "failed to shoulder its burden of showing that [E]rwin's technique applying the cocaine crash theory was valid and that the technique had been properly applied in this case." As noted, however, Erwin's testimony did not apply the cocaine crash theory to appellant. Before the jury, she was not asked if appellant had experienced cocaine crash or withdrawal.[11]

---

[10] Because the use of cocaine was alleged in the indictment, evidence of that use was not an extraneous offense. *Manning v. State*, 114 S.W.3d 922, 927 (Tex.Crim.App. 2003).

[11] Erwin was not directly asked if appellant had used cocaine. She testified appellant's blood sample contained the metabolite benzoylecgonine and that benzoylecgonine is produced in the body only following cocaine use. She agreed with the prosecutor that, from the presence of benzoylecgonine in a person's body, she could tell that cocaine "was used."

The State showed Erwin had bachelor's and master's degrees in chemistry, had taken additional graduate courses in forensic toxicology and had over 20 years experience in the field of chemistry, with five of those in the DPS crime laboratory. She also identified literature reporting studies on the effects of cocaine use. Appellant presents no challenge to the reliability of Erwin's testimony about her analysis of his blood, that concerning the metabolite benzoylecgonine, or that describing the effects on the body of cocaine use and cocaine withdrawal. His challenge is to testimony that Erwin did not give. We overrule appellant's sixth point.

In his final point of error appellant argues that even if the evidence of the presence of benzoylecgonine was relevant, it should have been excluded because the probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. In reviewing an objection to evidence under Rule 403, a court should consider, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex.Crim.App. 2005); *Manning*, 114 S.W.3d at 926. Appellant's argument reiterates the contentions regarding relevancy urged in support of his fifth point. His argument challenges the Court of Criminal Appeals' analysis of similar evidence in *Manning*, and its conclusion the failure to exclude such evidence under Rule 403 was not error. We find the analysis and holding in *Manning* dispositive and overrule appellant's seventh point.

14

Having overruled appellant's points of error, we affirm the trial court's judgment.


James T. Campbell
Justice


Do not publish.